# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-2059

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Kendrix D. Feemster, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: January 12, 2009
Filed:  July 13, 2009

———————

Before LOKEN, Chief Judge, WOLLMAN, BEAM, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, BENTON, and SHEPHERD, Circuit Judges.

———————

SMITH, Circuit Judge.

Kendrix D. Feemster was convicted of two counts of knowingly and intentionally distributing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). At sentencing, the district court[1] imposed the statutory mandatory minimum sentence of 120 months' imprisonment and eight years of supervised release—a downward variance from the Guidelines range of 360 months' to life. The government appealed the sentence, and we remanded for resentencing because the

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

record did not permit us to meaningfully analyze the reasonableness of Feemster's sentence. *United States v. Feemster*, 435 F.3d 881, 884 (8th Cir. 2006) ("*Feemster I*"). On remand, the district court again sentenced Feemster to 120 months' imprisonment but buttressed the rationale for the sentence. The government again appealed, and we found that the district court abused its discretion. *United States v. Feemster*, 483 F.3d 583, 588–90 (8th Cir. 2007) ("*Feemster II*"). The Supreme Court vacated the judgment and remanded to us for further consideration in light of *Gall v. United States*, 128 S. Ct. 586 (2007). We now affirm.

## I. *Background*

On March 16, 2004, Feemster sold 11.2 grams of crack cocaine to an undercover Drug Enforcement Administration (DEA) agent. Then, on March 25, 2004, he sold 6.8 grams of crack cocaine to the same officer. Thereafter, a grand jury charged Feemster with two counts of knowingly and intentionally distributing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).[2] Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851(a) giving notice that, if convicted, Feemster faced a ten-year mandatory minimum sentence because of his prior conviction for a felony drug offense. Feemster went to trial, and the jury convicted him on both counts.

Prior to sentencing, the United States Probation Office prepared a presentence investigation report (PSR) that set forth Feemster's criminal history. According to the undisputed sections of the PSR,[3] Feemster had the following juvenile convictions: (1)

---

[2]Although Feemster was originally charged with three counts, the district court dismissed one count, based on a March 11, 2004 sale of 5.7 grams of crack cocaine to an undercover DEA agent, on the government's motion to protect the confidentiality of one of its informants.

[3]Because Feemster did not object to the PSR's specific factual allegations, we accept as true the facts set forth in the PSR. *See United States v. Jenners*, 473 F.3d 894, 897 (8th Cir. 2007) (stating that although "[a] PSR is not evidence," a district

at age 13, attempted stealing; (2) at age 14, making a false bomb report; and (3) at age 15, stealing, attempted stealing, and second-degree burglary. Additionally, Feemster had the following adult convictions and sentences: (1) at age 16, possession of a controlled substance (crack cocaine) and possession of marijuana, resulting in a suspended sentence and probation, which he successfully completed; (2) at age 17, first-degree burglary, resulting in a sentence of six years' imprisonment (including citations for conduct violations on 65 separate occasions), from which he was twice conditionally released and both times his conditional release was revoked (submitting a positive urine test for marijuana); (3) at age 23, first-degree robbery (involving a handgun carried by his co-defendant), resulting in a ten-year suspended sentence and probation, which he violated; and (4) at age 24, possession of marijuana, resulting in a 60-day suspended sentence and one-year unsupervised probation.

Without enhancements, Feemster's base offense level was 26, *see* U.S.S.G. § 2D1.1(c)(7), and his criminal history category was IV, resulting in an advisory Guidelines range of 92 to 115 months' imprisonment. Feemster's prior conviction for a felony drug offense triggered a statutory minimum sentence of 120 months' imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(B), 851. Also, Feemster's adult status at the time he committed the instant offense and his prior convictions for two crimes of violence—first-degree burglary and first-degree robbery—prompted the probation office to recommend application of the career offender enhancement in the PSR. *See* U.S.S.G. § 4B1.1(a) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."). The career offender enhancement set Feemster's offense level at 37 and his criminal

court is permitted to accept the facts in the PSR as true unless the defendant files an objection to specific factual allegations).

-3-

history category at VI, yielding an advisory Guidelines range of 360 months to life imprisonment.

At sentencing on March 10, 2005, Feemster requested that the district court consider a sentence lower than his Guidelines range, reminding the court that, absent his two qualifying crimes of violence, he would be facing a sentencing range of 92 to 115 months' imprisonment. The district court acknowledged that Feemster committed one of these crimes at age 17 and the other at age 23. Additionally, the court noted that Feemster's sentencing range had already increased from 92 to 115 months to at least 120 months by virtue of the mandatory minimum. The government argued that a 30-year Guidelines sentence was reasonable given Feemster's criminal history. But the court disagreed, stating:

> I think this sentence is too much. 360 is too much because the offense you're counting on [for application of the ten-year mandatory minimum] is this 16-year-old drug offense for one when he was 16 years old. He's only 24. The crimes of alleged violence were one at 17, burglary, and the other at 23, the robbery.

The court then sentenced Feemster to concurrent 120-month sentences on each count of conviction, to be followed by three years of supervised release. On March 17, 2005, Feemster was brought before the court to correct the term of supervised release so that it met the statutory minimum of eight years. At the hearing, the court reiterated its reasons for deviating from the Guidelines range, explaining:

> And I know that there was some inquiry relative to Mr. Feemster's sentence of 120 months, and I sentenced him there because in considering the defendant's age, current age and age at which he committed the prior offenses including offense when he was 17–16 and 17 years old, and that's why I gave him that sentence that he received.

The government appealed, and we remanded to the district court for resentencing, concluding that "the record at this time does not permit our court to undertake a meaningful analysis of whether the sentence imposed is unreasonable." *Feemster I*, 435 F.3d at 884.

At resentencing, the district court further developed its reasoning for sentencing Feemster to 120 months' imprisonment, stating:

> Now, at the time that Mr. Feemster was sentenced[,] he was 27. At the time of the offense, . . . he was 26 . . . . Now, it's unquestioned that Mr. Feemster was a troubled youth. As they say, "Youth is wasted on the young." They just need a little wisdom. When he started getting . . . these points[,] . . . he was 17 years old.
>
> In any event, [t]he [c]ourt has looked at the 3553(a) factors and at the time the instant offense was committed the defendant was 26 years of age, it involved the distribution of 18 grams of cocaine base to a federal agent. No weapon was present. And while the defendant does have a record and much of it is significant because of his being a troubled youth, it would seem it includes violent felony convictions, and that's what made him a career offender, and many—most of those . . . prior convictions occurred when he was a juvenile.
>
> Now, as [sic] his adult conviction[,] he's placed on probation. He successfully completed that. Now, his second adult conviction involved the burglary of a home. And his third adult conviction was for robbery first degree which involved a weapon. However, his codefendant, Dean Goddard, who had the weapon and defendant did not. And his fourth and final conviction was a misdemeanor for possession of marijuana. He was placed on probation. He successfully completed that probation.
>
> So to me I think this 360 months to life is excessive. I think it pretty much takes away Mr. Feemster's life, so . . . in light of these 3553(a) factors, so I think an aggregate term of 120 months to be served concurrently with his state sentence of 1 CR-2495A and eight years of

-5-

supervised release would seem to address the sentencing objectives of punishment and deterrence and incapacitation. I think . . . ten years and then eight years of supervised release, I think . . . that's 18 years right there that he will be under some kind of supervision by the court system.

The government appealed, and this court again remanded, finding that the district court abused its discretion by: (1) giving too much weight to Feemster's young age at the time of his prior offenses; (2) substantially basing the variance on Feemster's age at the time of the instant offense and sentencing; (3) considering Feemster's lack of involvement with firearms, when such lack of involvement had already been accounted for in calculating Feemster's Guidelines range; and (4) considering Feemster's successful completion of two terms of probation, when failure to complete his probation would have warranted further punishment. *Feemster II*, 483 F.3d at 588–90. The Supreme Court vacated the judgment and remanded for further consideration in light of *Gall*.

## II. *Discussion*

According to the government, Feemster's 120-month sentence is procedurally unreasonable because the district court failed to provide an adequate explanation for the chosen sentence. In the alternative, the government argues that Feemster's sentence is substantively unreasonable for a defendant who has a lengthy and serious criminal history and who has not shown that prior sentences have deterred him from criminal activity.

In response, Feemster argues that the Supreme Court's decisions in *Gall* and *Kimbrough v. United States*, 128 S. Ct. 558 (2007), establish a deferential standard of review for district court criminal sentencing decisions. According to Feemster, while an appellate court may still consider the extent of the district court's deviation from the Guidelines range, it must give due deference to the district court's determination that the § 3553(a) factors, on a whole, justify the extent of the variance. Feemster asserts that the district court committed no procedural error in formulating his

sentence, as it correctly calculated the advisory Guidelines range, treated the Guidelines as advisory, considered all of the § 3553(a) factors, did not utilize any clearly erroneous facts, and adequately explained its reasoning for the sentence imposed. He also asserts that his sentence is substantively reasonable and that, even if this court would have imposed a different sentence, it must still give due deference to the district court's individualized decision.

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 128 S. Ct. at 596. Then, after the court affords both parties an opportunity to argue "for whatever sentence they deem appropriate," it "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id*. In making this determination, the district court is prohibited from presuming that the Guidelines range is reasonable. *Id*. Instead, it must "make an individualized assessment based on the facts presented." *Id*. If the court concludes that a sentence outside of the Guidelines range is warranted, then it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. "[A] major departure should be supported by a more significant justification than a minor one." *Id*. After the district court determines the "appropriate sentence," it must then "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id*.; *see also id*. at 594 (stating that, in fashioning a defendant's sentence, the district court "must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications").

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" *United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008) (quoting *Gall*, 128 S. Ct. at 591). We "must first ensure that the district court committed no significant procedural error."

*Gall*, 128 S. Ct. at 597. "Procedural error" includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*

A district court abuses its discretion when it (1) "fails to consider a relevant factor that should have received significant weight"; (2) "gives significant weight to an improper or irrelevant factor"; or (3) "considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Kane*, 552 F.3d 748, 752 (8th Cir. 2009) (internal quotations and citation omitted). In determining whether a district court committed procedural error, "[w]e do not require a district court to provide a mechanical recitation of the § 3553(a) factors when determining a sentence. Rather, it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." *United States v. Walking Eagle*, 553 F.3d 654, 659 (8th Cir. 2009) (internal quotations and citation omitted).

In the absence of procedural error below, we "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 128 S. Ct. at 597. In conducting this review, we are to "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* If the defendant's sentence is within the Guidelines range, then we "may, but [are] not required to, apply a presumption of reasonableness." *Id.* But we are not permitted to apply a presumption of unreasonableness if the sentence is outside the Guidelines range. *Id.* Instead, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* We *may not* require "'extraordinary' circumstances to justify a sentence outside the Guidelines" and are prohibited from "the use of a rigid mathematical formula that uses the percentage

of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*. at 595. Just because we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id*. at 597.

Post-*Gall*, appellate courts have begun to make their way across the new legal landscape of abuse-of-discretion sentence review. Like our sister circuits, we are endeavoring to determine what constitutes an abuse of discretion by a district court in sentencing a defendant outside of the Guidelines range. The Court in *Gall* expressly prohibited appellate courts from employing "rigid mathematical formulas" and an "extraordinary circumstances" test when reviewing the reasonableness of a sentence. *Id.* at 595. But the Court also expressly permitted appellate courts to "consider the extent of the deviation" from the Guidelines. *Id*. at 597. Additionally, the Court required that a district court "give serious consideration to the extent of any departure from the Guidelines and must explain [its] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id*. at 594. The parameters of these unusual deviations certainly have not been surveyed and mapped.[4]

---

[4]The Third Circuit recently expressed its frustration with the current sentencing regime, stating: "We do not pretend that the foregoing observations provide much, if any, guidance. Indeed, we find it difficult to give direction when we are ourselves endeavoring to understand our role in reviewing sentences after *Booker*, *Rita*, *Gall*, and *Kimbrough*." *United States v. Levinson*, 543 F.3d 190, 197 (3d Cir. 2008). The court then gave an example of the "mixed messages that can be drawn from *Gall*," explaining:

> On the one hand, we are told that proportionality between the extent of a variance and the extent of the justification for the variance is not required, 128 S. Ct. at 595 (rejecting an approach "that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence"), while, on the other hand, we are advised that a major variance "should be supported by a

Here, the government argues that the district court committed procedural error and should be reversed. The government relies *solely* on its allegation that the court failed to provide an "adequate explanation" for imposing a 120-month sentence, but it specifically *disclaims* any argument that the district court considered irrelevant factors in fashioning the sentence. Appellant's Supplemental Brief at 9, 12. According to the government, factors such as "Feemster's age at the time of the instant offense, the absence of a weapon in the instant offense, and Feemster's allegedly 'successful completion' . . . of the terms of probation for some of his prior offenses" are factors that "appear to fall within the extremely broad ambit of Section 3553(a), which includes 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Id*. at 12 (quoting 18 U.S.C. § 3553(a)(1)). Furthermore, the government concedes that "because the various sentencing considerations set forth in Section 3553(a) overlap to a considerable degree, a fact that is already taken into account in the computation of a defendant's advisory Sentencing Guidelines range . . . may also be relevant to other subsections of Section 3553(a)." *Id*. at 12–13. As a result, the government acknowledges that the district court could properly "consider the absence of a weapon as a circumstance of the offense under Section 3553(a)(1), even if the absence of a weapon also affects the defendant's Guidelines range." *Id*. at 13.

Given these concessions, we will restrict our review to whether the district court adequately explained its chosen sentence. According to the government, the district court's sentence is "procedurally unreasonable for want of an adequate explanation" because

---

more significant justification than a minor one," *id*. at 597.

*Id*. at 197 n.6.

-10-

despite Feemster's prior convictions for crimes of violence and his multitude of lesser violations, citations, and arrests, the district court sentenced Feemster in 2006 to the same statutory mandatory minimum that the court would have been required to impose had Feemster been a model citizen during the interval between Feemster's first felony cocaine base conviction and his conviction in the present case. Under those circumstances, the district court's abrupt announcement of a 120-month sentence, along with its unadorned statement that the Guidelines range of "360 months to life is excessive" . . . is procedurally unreasonable for want of an adequate explanation.

*Id.* at 17–18.[5]

We disagree. The record reflects that the district court provided, as our precedent requires, substantial "insight into the reasons for its determination." *Kane*, 552 F.3d at 756 (finding that, apart from one comment, the court failed to provide

---

[5]Additionally, the government notes that, although the district court "found that Feemster had successfully completed two terms of probation, the record does not reveal that Feemster successfully completed either term." *Id*. at 16. While the government has conceded that it is only challenging the adequacy of the district court's explanation, this argument seems to challenge the district court's factual findings. Nevertheless, we find that the district court's findings that Feemster successfully completed probation on his first adult conviction and his "fourth and final conviction" for "misdemeanor for possession of marijuana" are supported by the PSR. Paragraph 46 of the PSR states that Feemster was placed on probation for possession of a controlled substance (crack cocaine) and possession of marijuana. Paragraph 49 states that "[c]ourt records do not reflect any probation violations. As to Feemster's fourth conviction for possession of marijuana, ¶ 59 of the PSR states that he was "placed on probation for one year." Paragraph 62 states that "[i]nformation regarding probation adjustment is unavailable because the probation was unsupervised." Although ¶ 62 does not definitively state that Feemster successfully completed this probation, the government presented no evidence that he did not. Thus, the district court was permitted to draw the inference that Feemster successfully completed his probation.

additional insight into the reasons for imposing a 90-month downward variance). Applying the § 3553(a) factors, the district court offered three justifications for the variance. First, the court noted Feemster's youth, as it observed that Feemster's criminal career began at age 17. Second, the court observed that apparently no weapon was present at the time Feemster committed the instant offense. Third, the court cited Feemster's successful completion of probation. The government has already conceded that these justifications are "relevant factors." In combination, they form an adequate explanation for why the district court determined that "360 months to life is excessive." Furthermore, the district court acknowledged that it had considered the § 3553(a) factors before imposing a sentence of 120 months' imprisonment.

The district court did not turn a blind eye to the defendant's conduct but acknowledged Feemster's "record" and "violent felony convictions." *Cf. United States v. Shy*, 538 F.3d 933, 937 (8th Cir. 2008) (holding that, in sentencing defendant who pleaded guilty to possession of pseudoephedrine with knowledge that it would be used to manufacture methamphetamine, the district court failed to adequately explain the defendant's sentence because it did not discuss the "critical fact" that the defendant possessed methamphetamine when she was arrested, which undermined the court's conclusion that the defendant was "no longer the same person who committed the crime two years earlier and was capable of cleaning up her act and avoiding criminal conduct in the future"). Instead, the district court, acting within its discretion and applying the § 3553(a) factors, was not unreasonable in concluding that its three enunciated justifications supported a sentence of 120 months' imprisonment.

With regard to substantive reasonableness under § 3553(a) , we agree with the D.C. Circuit that because the Guidelines are now advisory only, "substantive appellate review in sentencing cases is narrow and deferential. As the case law in the courts of appeals since *Gall* demonstrates, it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C.

Cir. 2008). Here, the district court's justifications for imposing a 120-month sentence "rest[] on precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts, as the Supreme Court has repeatedly emphasized." *Id.* at 1095. As a result, we cannot say that the district court abused its discretion in sentencing Feemster to 120 months' imprisonment.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

RILEY, Circuit Judge, concurring.

Before reaching the issue of substantive reasonableness, we "must first ensure the district court committed no significant procedural error." Gall v. United States, 552 U.S. 38, __, 128 S. Ct. 586, 597 (2007). If not for the government's abandonment of its position that the district court gave significant weight to improper and irrelevant factors in fashioning Feemster's sentence, I would conclude the district court committed significant procedural error.

The majority's opinion leaves intact this court's precedent that an abuse of discretion occurs when a district court "gives significant weight to an improper or irrelevant factor." See Majority Opinion at 8 (quoting United States v. Kane, 552 F.3d 748, 752 (8th Cir. 2009)). See also United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005). "Relevant" is defined as "[l]ogically connected and tending to prove or disprove a matter in issue; having appreciable probative value—that is, rationally tending to persuade people of the probability or possibility of some alleged fact." Black's Law Dictionary 1316 (8th ed. 2004). The Rules of Evidence define relevancy as the "tendency to make the existence of any fact that is of consequence . . . more probable or less probable." Fed. R. Evid. 401. In explaining its reasons for the dramatic downward variance in Feemster's case, the district court gave significant weight to three factors: (1) Feemster's age at the time of the instant offense and

-13-

sentencing, (2) the fact Feemster did not carry a weapon when he committed his crimes, and (3) Feemster's successful completion of two terms of probation. These three factors had no appreciable probative value and were not of any particular consequence to Feemster's sentencing and specifically to the district court's substantial variance, that is, they were not relevant.

In the panel opinion, we reasoned the district court's basing the downward variance substantially on Feemster's age at the time of the instant offense (26) and sentencing (27)[6] was an abuse of discretion because:

> The Guidelines provide, "[a]ge (including youth) is not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.1, p.s. As we noted in [United States v. Feemster, 483 F.3d 583 (8th Cir. 2007) (Feemster II)], "[a]lthough the Guidelines are no longer mandatory, the Guidelines policy statements still must be taken into account in fashioning a reasonable sentence." Feemster II, 483 F.3d at 590 (citing 18 U.S.C. § 3553(a)(5)). A variance resulting in an "unusually lenient" sentence should not be based largely on the twenty-something age of the defendant, because relative youth is a factor that applies to many defendants and it is unlikely district courts will uniformly adopt the view that defendants in their mid-twenties deserve more lenient sentences than middle-aged or older defendants. See id. (citing United States v. Plaza, 471 F.3d 876, 879 (8th Cir. 2006) (quoting United States v. Maloney, 466 F.3d 663, 669 (8th Cir. 2006))).

United States v. Feemster, 531 F.3d 615, 619-20 (8th Cir. 2008), reh'g granted, vacated (8th Cir. Oct. 1, 2008) (Feemster III).

---

[6]The majority notes the district court considered the fact Feemster's criminal career began at age 17, see Majority Opinion at 12, but does not mention the district court substantially based the variance on Feemster's age at the time of the instant offense and sentencing. See United States v. Feemster, 531 F.3d 615, 618 (8th Cir. 2008), reh'g granted, vacated (8th Cir. Oct. 1, 2008).

The government now concedes Feemster's age is part of his "history and characteristics" under 18 U.S.C. § 3553(a)(1), and, therefore, the district court properly considered Feemster's twenty-something age in fashioning Feemster's sentence. However, the fact Feemster's age is part of his "history and characteristics" does not necessarily mean Feemster's age is a "characteristic" that is relevant for sentencing purposes and potentially to support a significant variance. Feemster's age does not distinguish him in any meaningful way from other defendants. In fact, 34.1% of all males arrested in the United States in 2007 were between the ages of 20 and 29.[7] In 2007, even more narrowly, males between the ages of 25 and 29 made up the largest demographic group—an estimated 17.24%—of all state and federal prisoners in the United States.[8] Feemster's age as a "characteristic[] of the defendant" no more provides a basis for a downward variance than other irrelevant sentencing characteristics such as Feemster's height (5' 9"), weight (175 lbs), eye color (brown), or hair color (black). As explained in the panel opinion, "[a] dramatic downward variance for Feemster based on his relative youth (26 or 27) is inappropriate because it manifestly would result in unwarranted sentencing disparities among similarly situated defendants." Feemster III, 531 F.3d at 620. Feemster's age has no significant or "appreciable probative value" in this sentencing and is irrelevant, absent the government's concession.

On rehearing the government acknowledges the district court did not commit procedural error by considering the absence of a weapon in the instant offense, or the fact Feemster's co-defendant carried a weapon during a prior robbery while Feemster did not. The government now concedes the district court properly considered the

---

[7]United States Department of Justice, Federal Bureau of Investigation, Criminal Justice Information Services Division, Table 39–Crime in the United States 2007, http://www.fbi.gov/ucr/cius2007/data/table_39.html.

[8]University of Albany, Sourcebook of Criminal Justice Statistics Online, Table 6.33.2007, http://www.albany.edu/sourcebook/pdf/t6332007.pdf.

absence of a weapon as part of the "nature and circumstances of the offense" under 18 U.S.C. § 3553(a)(1). However, the fact Feemster did not carry a weapon during the instant offense is not a "circumstance[] of the offense" that is relevant to whether a downward variance is warranted. Otherwise all other non-existent crimes and facts should be considered as "circumstances of the offense" too; for example, Feemster did not also possess or distribute methamphetamine or ecstasy, or commit murder, rape, mail fraud, tax evasion, kidnaping, burglary, or a host of other crimes during the commission of the instant offense. Feemster could have committed the instant offense in countless more egregious ways. To the extent the various crimes Feemster did not commit were "[l]ogically connected and tending to prove or disprove a matter in issue" related to Feemster's sentence, the absence of these crimes were all taken into account in calculating Feemster's Guidelines range. Neither <u>Gall</u> nor the majority opinion "overrule[s] our circuit precedent . . . that '[t]he absence of grounds that justify further punishment is not a ground for a downward variance.'"[9] <u>Feemster III</u>, 531 F.3d at 620 (citing <u>Feemster II</u>, 483 F.3d at 589).

Finally, but for the government's concession, I would conclude Feemster's completion of two terms of probation, on balance, was not a significantly relevant consideration or a proper ground for a downward variance in this case when compared to Feemster's history of repeated probation and conditional release revocations, and

---

[9]The district court also made a clearly erroneous determination, thereby committing procedural error, when it determined Feemster deserved a downward variance because Feemster's co-defendant possessed the weapon during a prior robbery rather than Feemster. <u>See</u> <u>Feemster II</u>, 483 F.3d at 589 n.5 ("Co-conspirators are responsible for all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.") (quotation omitted); <u>see also</u> <u>Gall</u>, 128 S. Ct. at 597 (explaining it is procedural error to "select[] a sentence based on clearly erroneous facts").

numerous citations for prison conduct violations.[10] See Feemster II, 483 F.3d at 589 ("Successfully completing a term of probation is similar to obeying the law or complying with a court order in that defendants are expected to obey the law, to comply with court orders, and to complete terms of probation successfully. The reward for doing so is the avoidance of further punishment.") (citations omitted).

In my view, the district court committed significant procedural error by substantially basing Feemster's unusually lenient sentence on these three irrelevant and insignificant factors. However, accepting the government's concession that all of the justifications given by the district court for Feemster's sentence *were* relevant and proper sentencing considerations, I am left to agree with the majority's conclusion that the district court adequately explained the chosen sentence. In light of the deferential standard announced in Gall, combined with the government's concessions and the majority's view, I also agree with the majority's conclusion Feemster's sentence was not substantively unreasonable.

COLLOTON, Circuit Judge, concurring.

Our decision portends what Congress once considered unwarranted disparity in the sentencing of federal criminal defendants, but I agree that the result follows from the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005),

---

[10]Further, the record is not clear Feemster successfully completed his one-year term of probation for his fourth conviction, which was counted by the district court as a successful completion. The probation term began February 9, 2004, and Feemster was later charged with distributing crack cocaine in March 2004 and was found guilty of that March offense in December 2004.

and *Gall v. United States*, 128 S. Ct. 586 (2007).  Therefore, with these additional observations, I concur in the opinion of the court.[11]

In *Booker*, the Supreme Court held that certain applications of the mandatory federal sentencing guidelines violated the Sixth Amendment, and adopted a remedy that rendered the guidelines essentially advisory in all cases.  The courts of appeals were charged with conducting appellate review to determine whether a sentence was substantively "unreasonable." Responding to statements in *Booker* that reasonableness review was designed "to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities," 543 U.S. at 264, this court applied a version of proportionality review, in which we required that the district judge's justifications for a sentence outside the guideline range be "proportional to the extent of the difference between the advisory range and the sentence imposed."  *United States v. Gall*, 446 F.3d 884, 889 (8th Cir. 2006) (internal quotations omitted), *rev'd*, 128 S. Ct. 586 (2007).

In *Gall*, however, the Supreme Court held that proportionality review of sentences imposed under § 3553(a) was contrary to *Booker* and its interpretation of the Sixth Amendment.  *Gall*, 128 S. Ct. at 594.  Presumably to avoid Sixth

---

[11]The government correctly acknowledges that Feemster's relative youth, non-use of a weapon, and performance during prior terms of probation are within the wide range of matters that may be considered by a sentencing court under 18 U.S.C. § 3553(a), and that facts taken into account when computing an advisory guideline range also may be relevant to other subsections of § 3553(a).  As the government also notes, however, the district court made a dubious finding that Feemster successfully completed a one-year term of probation imposed in February 2004, given that Feemster was convicted in this federal case for distributing crack cocaine in March 2004.  *Cf. ante*, at 11 n.5.  Nonetheless, the government did not object to the court's reliance on this finding, and under a plain error standard of review, I see no reasonable probability on the record as a whole that the district court would have selected a longer term of imprisonment without its observation about this term of probation.

-18-

Amendment violations that would result from more rigorous appellate review, *see id.* at 602 (Scalia, J., concurring), the Court emphasized that a court of appeals reviewing a district court's application of the § 3553(a) factors must refrain from proportionality review and proceed under a deferential abuse of discretion standard. The Court did say that a court of appeals may still consider "the extent of any variance from the Guidelines range," *Gall*, 128 S. Ct. at 597, but without authority to consider whether the extent of the disputed variance is disproportional to the reasons given to justify it, one searches in vain for a principled basis on which to conduct a consistent and coherent appellate review for reasonableness. At least when it comes to variances based on circumstances that are specific to an individual defendant, I agree with the court that it will be the unusual case in which we reverse a district court's sentence as substantively unreasonable.[12]

Substantive reasonableness review endures, so there must be at least a "shocks the conscience" sort of constraint on district judges, but this case is not in that category. *Cf. Rita v. United States*, 551 U.S. 338, 365 (2007) (Stevens, J., concurring) (rejecting "purely procedural review" as contrary to *Booker*, because "[a]fter all, a district judge who gives harsh sentences to Yankees fans and lenient sentences to Red Sox fans would not be acting reasonably even if her procedural rulings were impeccable"). We now must defer to the wide range of personal sentencing

---

[12]*Kimbrough v. United States*, 128 S. Ct. 558 (2007), and *Spears v. United States*, 129 S. Ct. 840 (2009) (per curiam), also settled that district judges need give no weight to the crack cocaine guidelines, because they neither embody a policy decision directed by Congress, *Kimbrough*, 128 S. Ct. at 570-73, nor exemplify the Sentencing Commission's "exercise of its characteristic institutional role" to formulate guidelines in light of "empirical data and national experience." *Id.* at 575 (internal quotation omitted). The Supreme Court has reserved decision on whether "closer review" is warranted when a sentencing judge varies from guidelines other than the crack cocaine guidelines "based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case," *id.* (internal quotation omitted), and that question is not directly presented in this case.

philosophies that are reflected in the ranks of district judges, and even with Feemster's checked past, a term of ten years' imprisonment for his most recent drug trafficking is not so lenient that it must be declared beyond the realm of what a reasonable federal judge might select under § 3553(a). I therefore agree that the district court's judgment must be affirmed.

One consequence of these recent developments is likely to be substantial sentencing disparity in federal criminal cases. District judges are supposed to "take account of sentencing practices in other courts," *Kimbrough*, 128 S. Ct. at 574, but there is now no basis in law to declare that one sentencing practice is preferred over another, and no authority for a court of appeals to enforce such a preference. The judge in this case thought Feemster's "troubled youth" was largely mitigating, and elected to impose the statutory minimum sentence. Other reasonable federal judges will believe that the Sentencing Commission was correct to declare a policy that age, including youth, is ordinarily not relevant to sentencing, USSG § 5H1.1, and that a relatively youthful drug trafficking offender with a serious criminal history should be sentenced at or near the statutory maximum in accordance with the career offender guideline. *See United States v. Jackson*, 300 F. App'x 428, 429-31 (7th Cir. 2008) (affirming sentence within advisory range for career offender who committed offense of conviction at age twenty-two); *Marion v. United States*, No. 04-94-P-H, 2008 WL 4602304, at *5-8 (D. Me. Oct. 15, 2008) (recounting district court's refusal to vary downward in career offender case based on counsel's argument that "this is a young man that has worth, he has potential for rehabilitation; he is extremely young" and "[h]e is a product to a large degree of troubled adolescence"); *see also* 28 U.S.C. § 994(h). Reasonable minds can differ. The offender's punishment in these career offender cases – ranging from the statutory minimum term to a sentence at or near the

statutory maximum – will depend substantially on the luck of the judicial draw. *See United States v. Maloney*, 466 F.3d 663, 669-70 (8th Cir. 2006).[13]

In the 1980s, a bipartisan majority in Congress viewed a similar state of affairs as unacceptable, and opted to remove a substantial degree of discretion from sentencing judges in the interest of uniformity. The Senate Judiciary Committee explained the problem this way:

> The absence of a comprehensive Federal sentencing law and of statutory guidance on how to select the appropriate sentencing option creates inevitable disparity in the sentences which courts impose on similarly

---

[13]Early results after *Gall* and *Kimbrough* show that sentence disparities are aggravated further by policy disagreements among sentencing judges about what sentence best reflects the § 3553(a) factors in mine-run cases. For example, some district judges now agree with the advisory crack cocaine guidelines (which apply a crack-powder ratio ranging between 25-to-1 and 80-to-1), and apply them under § 3553(a). *See United States v. Haigler*, No. 08-3165, 2009 WL 1228264, at *2 (10th Cir. May 6, 2009); *United States v. Gibbons*, 553 F.3d 40, 44 (1st Cir. 2009). Other judges vary from the advisory guidelines based on a policy disagreement, and apply a crack-powder ratio of 20-to-1, *see United States v. Dozier*, No. S108CR08-02, 2009 WL 1286486, at *6 (S.D.N.Y. May 8, 2009), or 10-to-1, *see United States v. Edwards*, No. 04-CR-1090-5, 2009 WL 424464, at *3 (N.D. Ill. Feb. 17, 2009), or 1-to-1, *see United States v. Gully*, No. CR08-3005, 2009 WL 1370898, at *9 (N.D. Iowa May 18, 2009). Some district judges decline to apply the full measure of penalties recommended by the congressionally directed advisory guideline for possession of child pornography, *see United States v. Stern*, 590 F. Supp. 2d 945, 960-61 (N.D. Ohio 2008); *United States v. Baird*, 580 F. Supp. 2d 889, 894-95 (D. Neb. 2008); *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008), while other judges believe that rejection of the guideline's policy understates the seriousness of child pornography offenses and fails to promote respect for law and to provide just punishment. *See United States v. Fiorella*, 602 F. Supp. 2d 1057, 1074-75 (N.D. Iowa 2009). The Sentencing Commission presumably will catalog these and other variations for consideration by the courts and Congress. *See Booker*, 543 U.S. at 766-67.

situated defendants.  This occurs in sentences handed down by judges in the same district and by judges from different districts and circuits in the Federal system.  One judge may impose a relatively long prison term to rehabilitate or incapacitate the offender.  Another judge, under similar circumstances, may sentence the defendant to a shorter prison term simply to punish him, or the judge may opt for the imposition of a term of probation in order to rehabilitate him.

S. Rep. No. 98-225, at 41 (1983) (internal footnotes omitted), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3224.

The Committee found that much of the variation in sentencing was "directly attributable to the fact that some judges tend to give generally tough or generally lenient sentences," *id.* at 44, and that "variation in offense and offender characteristics does not account for most of the disparity." *Id.* at 45.  Because the Committee believed that "[s]entencing disparities that are not justified by differences among offenses or offenders are unfair both to offenders and to the public," *id.*, it recommended that "[f]ederal statutes should provide clear guidance to Federal judges on how to select from among the available alternatives an appropriate sentence to impose upon the particular defendants before them." *Id.* at 49.  These observations led to the Sentencing Reform Act of 1984 and the mandatory guidelines.

Thoughtful critics of the Sentencing Reform Act have referred to the mandatory guidelines as a "failed experiment," *e.g.*, *United States v. Canania*, 532 F.3d 764, 778 (8th Cir. 2008) (Bright, J., concurring), but the fact remains that the elected branches have never renounced determinate sentencing or restrictions on the discretion of federal sentencing judges.  The most recent action of Congress in this area, albeit controversial, was designed to cabin discretion further by limiting the available grounds for departure and strengthening appellate review.  *See* PROTECT Act, Pub. L. No. 108-21, § 401, 117 Stat. 650, 667-76 (2003).  Mandatory minimum sentences remain in full effect with respect to numerous offenses, and they are constitutional. *Harris v. United States*, 536 U.S. 545, 568-69 (2002).  The Supreme Court,

recognizing the policy goals of legislatures to make sentences proportional to the gravity of offenses and to achieve parity among defendants, specified that nothing in its Sixth Amendment decisions "impugns those salutary objectives." *Blakely v. Washington*, 542 U.S. 296, 308 (2004). We have returned to a system of wide discretion for sentencing judges, therefore, not because the people demanded it through the political process, or because it is constitutionally required, but because the Supreme Court decreed the advisory system as a remedy for constitutional flaws in *the particular manner* in which Congress established determinate sentencing under the Sentencing Reform Act.

The irony is that the Court chose its remedy in *Booker* on the view that the advisory guidelines would "deviate less radically from Congress' intended system" than would retention of the mandatory guidelines without judicial factfinding. *Booker*, 543 U.S. at 247. The Court also acknowledged, however, that appellate review "will not provide the uniformity that Congress originally sought to secure," *id*. at 766-67, and in light of *Gall* and *Kimbrough*, it appears that with respect to sentences above the statutory minimum, district judges have regained most of the unconstrained discretion that Congress eliminated in 1984. *Cf. Booker*, 543 U.S. at 297 (Stevens, J., dissenting); *id*. at 305 (Scalia, J., dissenting). The United States Attorney is understandably frustrated that sentences like the one imposed in this case undermine uniformity, but "it is not our role to fight a rear-guard action to preserve quasi-mandatory Guidelines." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008). At this point, any such action must be taken by Congress. *See*, *e.g.*, *Gall*, 128 S. Ct. at 603 (Souter, J., concurring) ("After *Booker*'s remedial holding, I continue to think that the best resolution of the tension between substantial consistency throughout the system and the right of jury trial would be a new Act of Congress: reestablishing a statutory system of mandatory sentencing guidelines (though not identical to the original in all points of detail), but providing for jury findings of all facts necessary to set the upper range of sentencing discretion.").

BEAM, Circuit Judge, dissenting.

Because I agree with the government that the district court failed to adequately explain the 240-month deviation, and because the resulting 120-month sentence is substantively unreasonable, I respectfully dissent.

First, I agree with the court that whether we are reviewing sentences within or without the Guidelines range, we apply a deferential abuse-of-discretion standard, ensuring first that no procedural error occurred and if none, considering the substantive reasonableness of the sentence. Ante at 8; Gall v. United States, 128 S. Ct. 586, 591, 597 (2007). I therefore concur in that portion of the court's opinion. And, I fully acknowledge that under the "deferential abuse-of-discretion" standard, appellate review of federal sentences is greatly curtailed, harkening back to pre-Guidelines days of federal sentencing.[14] I also believe, as I always have, that there is good reason for giving sentencing judges great latitude.[15] Yet, notwithstanding the prudence exhibited in giving district courts such deserved deference, there remains review nonetheless–an element seemingly lost in the court's instant analysis. The practical result of this court's affirmance of Feemster's sentence establishes, effectively, a standard of no appellate review at all. We adopt a posture today that is so deferential that, so long as the district court gives lip service and a bit of discussion

---

[14]Without substantive change in the governing statutes and the Guidelines, our current review is a 180-degree turnaround from our days of near micro-management. United States v. Robinson, 454 F.3d 839 (8th Cir. 2006); United States v. Saenz, 428 F.3d 1159 (8th Cir. 2005). And, I believe we have now gone too far.

[15]I firmly believe, based upon almost five years of experience as a federal trial judge and the sentencing, pre-Guidelines, of at least 500 federal felons, that the "disparity principle," advanced by advocates as the foundation and bedrock underlying federal guideline sentencing, is an illusion, by at least half. Virtually every individual presents a different picture to a careful and conscientious sentencing judge. As a result, alleged uniformity is often disparity, viewed through a different prism.

to the relevant 18 U.S.C. § 3553(a) factors, a sentence will almost never be reversed, procedurally or otherwise. This approach is not supported by Supreme Court precedent.

I agree with Judge Riley that the district court committed significant procedural error by substantially basing Feemster's unusually lenient sentence on three irrelevant and insignificant factors–youth, absence of weapon, and successful completion of probation. The repeated and redundant use of these factors does not adequately explain nor support the great variance in this case. And, I do not so willingly credit the government's "concessions" (which is a misnomer, as I see it, for the government's mere articulation of its argument) as a barrier to reversal in this case.

Gall's directives leave no doubt that "meaningful appellate review" remains intact. 128 S. Ct. at 597. When the Supreme Court instructed appellate courts to review for procedural and substantive reasonableness, I believe it meant what it said. Not only did the district court fail to support Feemster's sentence with any significant justification, but also this court's opinion lacks any meaningful discussion of the circumstances under which a court of appeals may actually reverse a district court's sentence. What *would* constitute an abuse of discretion if this case does not?

If Feemster is a case for affirmance, then surely there is no reversal on the appellate horizon in this circuit. Feemster's litany of juvenile and adult convictions, see United States v. Feemster, 483 F.3d 583, 585-86 (8th Cir. 2007), include two qualifying crimes of violence flatly overshadowing his age–the factor that was clearly the district court's primary justification and concern at sentencing. Further, the district court's articulation that Feemster "successfully completed . . . probation" as justification for this huge deviation is both disingenuous and counter-factual. That this court *accepts* such a justification is difficult to understand. We ignore Feemster's sixty-five separate conduct violations received during his prior imprisonment, two conditional release revocations, and at least one probation that was certainly violated.

-25-

And, I might add, that considering the existence of an unsupervised probation as "successful completion" when there is no clear indication either way, is a stretch. Notwithstanding the government's failure to clarify the confusion regarding the completion, or not, of the unsupervised term of probation, this court is obligated under existing precedent to review the record on its own. As I see it, this probation was almost certainly not "successfully completed" such as to support such a deviation. The district court, however, framed its justification in such a way as to receive a free pass on appeal.

Even though the district court bolstered its justification for the departure by mentioning Feemster's "record" and "violent felony convictions," repeated use of Feemster's age remained the obvious driving force behind the fashioning of this sentence. We should not allow such circumlocution to guide our appellate review. By giving this sort of action free rein without meaningful review, sentencing courts that mention a few words based upon § 3553(a) requirements have obtained a license for capriciousness. Merely acknowledging a consideration of § 3553(a) factors is not enough. Ante at 12. The court does not seriously attempt to analyze the district court's reasoning and in the end, does not adequately address how the district court's three justifications "sufficiently" support the resulting 240-month deviation. Gall, 128 S. Ct. at 594. While vaguely plausible, but barely, these justifications do not provide the convincing explanation needed to support the deviation made here. Review for abuse of discretion must be more than a review of thin recitations already meaningfully considered in Guideline calculations.

At bottom, I am left with a "definite and firm conviction" that this sentence is outside the realm of reasonableness dictated by the facts of the case. United States v. Autery, 555 F.3d 864, 879 (9th Cir. 2009) (Tashima, J., dissenting); United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008). A more serious level of review supports reversal in this case. I dissent.

_____