# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1414

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Northern |
| v. | * | District of Iowa. |
| | * | |
| Robert H. Frank, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: October 23, 2009
Filed: March 4, 2010

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Appellant Robert Frank initially received a sentence of 100 months imprisonment followed by three years of supervised release for 49 counts of criminal activity, including mail fraud, wire fraud, conspiracy to defraud the United States, making false material statements, obstruction of justice, money laundering, conspiracy to commit money laundering, forfeiture, and removal of property to avoid seizure of property. The court also imposed a fine of $5,000 and special assessments of $4,900. Frank appeals, arguing that (1) the district court erred in revoking his supervised release and (2) his revocation sentence is substantively unreasonable. We affirm.

I.

After completing his prison term, Frank began supervised release on September 5, 2008. Frank's supervised release was monitored by United States Probation Officer Amber Lupkes. Frank spent 120 days in a halfway house and was released on December 23, 2008. On January 14, 2009, Officer Lupkes submitted a Petition for Warrant or Summons for Offender Under Supervision, based upon Frank's alleged violations of his supervised release terms: (1) failing to pay the financial penalty imposed at his original sentencing, (2) associating with persons engaged in criminal activity and/or felons without permission from Officer Lupkes, and (3) failing to answer truthfully to all inquiries from Officer Lupkes and follow her instructions. On February 9, 2009, the district court[1] conducted a revocation hearing and found that Frank had violated the terms of his supervised release by associating with known felons and by failing to pay restitution as ordered.[2] The court declined to revoke Frank's supervised release but modified the conditions of his supervised release by: (1) requiring him to pay $300 immediately on his financial obligations, (2) barring any contact with any individual who had testified against him at his trial, and (3) placing him on electronic monitoring. The court noted that all of the terms of his original sentence remained in effect, including his monetary obligations to the United States government.

Following the revocation hearing, Frank was placed on the Global Positioning Satellite (GPS) monitoring program. Frank met with Officer Lupkes and reviewed all of the conditions of the program. He agreed to and signed the Location Monitoring

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

[2]Alternatively, the district court found that, even if Frank did not understand what the term "association" encompassed, Officer Lupkes had expressly told him not to contact a specific individual (one of his coconspirators), Frank did so, and Frank lied to Officer Lupkes and the court when he stated otherwise.

Program-Participant Agreement. Officer Lupkes directed Frank to charge his GPS unit for 30 minutes in the morning and 30 minutes in the evening. When Officer Lupkes asked Frank if he understood how to charge the GPS unit, Frank replied, "Yes, I'll figure it out." On February 10, 2009, at approximately 9:30 a.m., Senior United States Probation Officer Michael Mims reviewed the GPS website and noticed that Frank's GPS battery was low. Officer Mims contacted Frank and directed him to charge his GPS unit for 30 minutes. Frank stated that he would do so. At approximately 1:20 p.m., Officer Lupkes and Officer Mims were notified by the GPS company that Frank's GPS unit was in violation status due to an extremely low battery. Officer Lupkes attempted to call Frank four times and left a message instructing him to immediately charge his GPS unit. Frank did not answer the phone and did not return the officer's calls. As a result of Frank's failure to charge his GPS unit, it stopped tracking his whereabouts on February 11, 2009, at approximately 1:58 a.m.

On February 11, 2009, Frank was arrested on a warrant issued for the new alleged violations of his supervised release. On February 20, 2009, the district court conducted a second revocation hearing and found that Frank had violated the terms of his supervised release by: (1) failing to comply with Officer Lupkes's instruction that he charge his GPS unit for 30 minutes in the morning and 30 minutes at night, and (2) failing to comply with Officer Mims's direction to charge his GPS unit. The court stated that both of Frank's violations were Grade C violations. See United States Sentencing Commission, Guidelines Manual, §7B1.1 (Nov. 2009). With a criminal history category IV, Frank's recommended revocation range was 6 to 12 months of imprisonment pursuant to the section 7B1.4(a) policy statement. See id. §7B1.4(a). However, the court observed that it had statutory authorization to impose a sentence of up to two years. See 18 U.S.C. § 3583(e)(3) (providing that, where the offense that resulted in the term of supervised release is a class C or D felony, the maximum term of imprisonment upon revocation is two years). The court noted that this was not a mandatory revocation, see USSG §7B1.3(a)(2), and then heard from both the

government and Frank's attorney as to the appropriate disposition of the case. The government asked the court to revoke Frank's supervised release and impose a sentence of two years. Frank sought to remain on supervised release. The district court revoked Frank's supervised released and imposed a two-year sentence, explaining:

> Well, when I saw you on February 9, basically, GPS was your last chance to stay in the community. I have nothing else to offer you. The halfway house type beds are no longer available at all in the Northern District of Iowa, with limited exceptions, because of contract problems. The terms of your supervised release being modified were spelled out by the Court. You were told what to do with the GPS unit. By your own admission, you didn't. And you failed to respond to Mr. Mims's warning. You failed to respond to Mrs. Lupkes. And basically, I think you're gaming the Court again, and I'm just not going to waste any more time. We have nothing to offer you in the community. We've tried to work with you. All you do is -- you're noncompliant. And then when things go wrong, you try to blame everyone, say the unit doesn't work, your probation officer did this, didn't do that. And it's nonsense. So incorporating the record I made on the 9th with this record, and after considering all the factors at 18 United States Code Section 3553(a), it's the judgment of the Court that Robert Frank's supervised release is revoked. He's hereby committed to the custody of the Bureau of Prisons for a term of 24 months. When he gets out of prison, we're not going to put him back on supervised release. He is not someone that we can supervise in the community.

(Revocation Hr'g Tr. 79-80, Feb. 20, 2009.)

## II.

On appeal, Frank argues that the district court erred in revoking his supervised release and that his revocation sentence is substantively unreasonable.

A.

Frank argues that the district court's revocation decision must be reversed because the court based its decision, in part, on Frank's failure to pay the special assessments in his original sentence without addressing his argument that the obligation had ceased by operation of law. "We review a district court's decision to revoke supervised release for an abuse of discretion and the court's underlying factual findings as to whether a violation occurred for clear error." United States v. Miller, 557 F.3d 910, 914 (8th Cir. 2009) (quotation omitted). "A district court may revoke a defendant's term of supervised release and impose a sentence of imprisonment if the court finds by a preponderance of the evidence that the defendant violated a condition of his supervised release." Id. at 913-14 (citing 18 U.S.C. § 3583(e)(3)). "A district court need only find a single violation to revoke a defendant's supervised release." Id. at 914; see 18 U.S.C. § 3583(e)(3) (noting that a district court may revoke supervised release if a defendant "violated *a condition* of supervised release" (emphasis added)).

In this case, separate and apart from any failure to pay a financial obligation, Frank's supervised release was revoked because the GPS monitoring unit ceased tracking his location due to his admitted failure to charge the unit. Given Frank's admission, the district court's decision to revoke Frank's supervised release based on his failure to comply with this condition was amply supported in the record and was well within the court's discretion. Therefore, we hold that the district court did not abuse its discretion in revoking Frank's supervised release, without addressing the propriety of the district court's handling of the financial obligation issue.

B.

Frank asserts that his revocation sentence is substantively unreasonable because (1) of the disparity between his 24-month sentence and the 6 to 12 month

recommended revocation range of the section 7B1.4(a) policy statement and (2) the district court committed a clear error in judgment because his sentence "exceeds that necessary 'to reflect the seriousness of the offense,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" (Appellant's Br. 12 (quoting 18 U.S.C. § 3553(a)(2)).)

"Regardless of whether the sentence imposed is inside or outside the Guidelines range," Gall v. United States, 552 U.S. 38, 51 (2007), "[w]e review the substantive reasonableness of a revocation sentence 'under a deferential abuse-of-discretion standard[,]'" Miller, 557 F.3d at 917 (quoting Gall, 552 U.S. at 41). Post-Gall, "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). In imposing a revocation sentence, "[a] district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Kreitinger, 576 F.3d 500, 504 (8th Cir. 2009) (quotation omitted).

The section 7B1.4(a) policy statement's "suggested ranges . . . are only advisory." United States v. White Face, 383 F.3d 733, 738 (8th Cir. 2004); see United States v. Oliver, 931 F.2d 463, 465 (8th Cir. 1991) (stating that "there are no binding guidelines addressing the sentence for a violation of a condition of supervised release, only a policy statement about a court's options in such a situation"). In addition, we have repeatedly upheld revocation sentences above the recommended revocation range. See, e.g., Kreitinger, 576 F.3d at 504 (upholding 23-month and 35-month revocation sentences where the recommended range was 4 to 10 months because "the district court . . . explain[ed] why a more severe sentence was warranted" such as the

defendant's "'serious criminal history of financial frauds'" and "that she was 'extremely' likely to 'recidivate'"); United States v. Larison, 432 F.3d 921, 922, 924 (8th Cir. 2006) (upholding statutory maximum revocation sentence of 60 months where the recommended range was 5 to 11 months because the defendant "was not entitled to any particular sentence within the statutory limit" and "[t]he district court expressed grave concern over [the defendant's] numerous and repeated violations of the terms of his supervised release" and the defendant "persisted in his criminal conduct"); United States v. Cotton, 399 F.3d 913, 915-16 (8th Cir. 2005) (upholding 46-month revocation sentence where the recommended range was 7 to 13 months because the district court addressed "the statutory sentencing goals" and emphasized that the defendant "had repeatedly violated the conditions of her supervised release" and that "the nature of her violations put her at risk for serious criminal conduct").

Here, the court considered the recommended revocation range but decided that it was insufficient. Even excepting the violation with regard to Frank's failure to pay his financial obligation, he had multiple violations of his supervised release. At the first revocation hearing, the district court gave Frank a second opportunity to comply with the conditions of his release. Not even one day passed before Frank failed to comply yet again with his supervised release conditions. The district court conducted a second revocation hearing and concluded that Frank was generally "noncompliant" and, thus, could not be "supervise[d] in the community." (Revocation Hr'g Tr. 79-80.) The court noted its consideration of the section 3553(a) factors and imposed a 24-month sentence. We find no clear error in the district court's judgment in weighing those factors. Rather, the court's evaluation of Frank's conduct as justifying a sentence above the recommended revocation range falls within the wide range of discretion available to the district court. Accordingly, Frank's revocation sentence was not substantively unreasonable.

## III.

We affirm the judgment of the district court.

_____