# United States Court of Appeals
### For the Eighth Circuit

_____

No. 25-1611
_____

United States of America

*Plaintiff - Appellee*

v.

Jason Kale Clampit

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: May 15, 2026
Filed: June 24, 2026
[Unpublished]
_____

Before COLLOTON, Chief Judge, SHEPHERD and KOBES, Circuit Judges.
_____

PER CURIAM.

Defendant Jason Clampit pled guilty to one count of possession of a prohibited biological weapon, namely ricin,[1] in violation of 18 U.S.C. § 175(b). The district

---

[1]Ricin is "a toxin derived from the castor bean plant [that] is extremely deadly." United States v. Baker, 98 F.3d 330, 333 (8th Cir. 1996). We have

court[2] sentenced him to 96 months' imprisonment and three years' supervised release.  Clampit now appeals, arguing that his sentence is substantively unreasonable.  Having jurisdiction under 28 U.S.C. § 1291, we affirm the sentence.

I.

In January 2024, Arkansas police officers received a phone call from Joy Uribe, Clampit's half-sister, who reported a possible ricin poisoning.  Uribe told police that Clampit had poisoned his mother with ricin and that Clampit's mother was hospitalized.

Uribe later sent screenshots of Clampit's text messages to the FBI in which Clampit admitted that he had produced ricin, including a "mixture . . . made of ricin water and lye," to "set up traps" for trespassers.  Ricin toxin can be extracted from castor beans, then purified and dissolved in water to be released as a liquid.  When law enforcement searched Clampit's residence pursuant to a search warrant, they found castor beans and seeds, seeds in a paper towel, a jar with liquid, and a .22 caliber revolver.

Shortly after, Clampit was arrested.  While he was incarcerated, investigators overheard Clampit instructing his girlfriend Linda Hussong to take the jars of liquid found in his house and "throw it all away"; he later told her again to "go in there and make sure everything is empty."

A federal grand jury charged Clampit with one count of developing, producing, stockpiling, transferring, acquiring, retaining, or possessing a biological agent for use of a weapon in violation of 18 U.S.C. § 175(a) (Count 1) and one count

previously acknowledged evidence that "about .7 gram of 5% pure ricin . . . [could be] enough to kill 126 people."  Id.

[2]The Honorable Timothy L. Brooks, Chief Judge, United States District Court for the Western District of Arkansas.

of possession of a biological agent, namely ricin, in violation of 18 U.S.C. § 175(b) (Count 2). Clampit pled guilty to Count 2 pursuant to a written plea agreement, and the district court dismissed Count 1 on motion of the Government. Following the plea agreement, and prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR) that calculated an advisory imprisonment range under the United States Sentencing Guidelines of 77 to 96 months.

At sentencing, the Government argued that an upward variance from the Guidelines range was warranted. The Government stated that the ricin discovered in the case was "enough to kill everybody in this courthouse," and that it was "the most deadly substance [it had] ever discussed . . . in this Court." It further argued that "there[] [is] no legitimate purpose" to have ricin "other than [as] a weapon." The Government also pointed to Clampit's lengthy criminal history, arguing that it "paint[ed] a picture that [he] is dangerous [and] has been dangerous to the community for a long time."

Clampit opposed the Government's request for an upward variance. While acknowledging that his criminal history was an aggravating factor with regard to his sentence, Clampit pointed out that he was a "polysubstance addict most of his life"—starting as early as the age of 10—which "affect[ed] his maturation and decisionmaking." Clampit also noted that he was physically and sexually abused at a young age, and that he had mental health issues such as depression, anxiety, and hallucinogen use disorder. Clampit ultimately concluded that "a guideline sentence is fair because it[] balanc[es] his criminal history [and] . . . the circumstances of the case," suggesting a sentence that "fall[s] somewhere in that middle [or] maybe a little bit towards the serious end" of the Guidelines range. Clampit later reiterated to the district court that "a guideline sentence gets it right."

The district court, weighing the § 3553(a) sentencing factors, imposed a top-of-the-Guidelines sentence of 96 months. Recognizing the deadly nature of ricin, the district court noted that "[w]ith regard to . . . the relative seriousness of the offense, this case is singularly unique." The district court further found that, at least

at some point, Clampit intended "to use the substance that [he] knew [was] lethal . . . to cause harm to others," which was an "extremely aggravating" factor. The district court also expressed concern that Clampit was "instructing others . . . to go destroy evidence," and that he was a felon with nearly "two convictions per year of [his] adult life," some of which included domestic abuse and attempted first-degree battery.

However, the district court also discussed several mitigating factors. It recognized that Clampit had a tumultuous upbringing, mental health issues, and an early exposure to drugs, all of which it "certainly view[ed] . . . as mitigating." Thus, while the district court noted that the aggravating factors "could make a pretty easy case for the Court to vary upward," it stated that it was "not going to do that," and it instead imposed a within-Guidelines sentence of 96 months. Clampit appeals.

## II.

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (citation omitted). We "must first ensure that the district court committed no significant procedural error." Id. (citation omitted). "In the absence of procedural error below, we 'should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" Id. (citation omitted).

Clampit's sole argument on appeal is that his sentence is substantively unreasonable. In reviewing a sentence for substantive reasonableness, "we are to 'take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.' If the defendant's sentence is within the Guidelines range, then we 'may . . . apply a presumption of reasonableness.'" Id. (citations omitted). "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." Id. at 464 (citation omitted). Additionally, as we have

frequently stated, "a sentencing court has wide latitude to weigh the section 3553(a) factors in each case and assign some factors greater weight than others." United States v. Roberts, 747 F.3d 990, 992 (8th Cir. 2014) (citation omitted). Thus, "a defendant's disagreement with the district court's balancing of relevant considerations does not show that the court abused its discretion." United States v. Campbell, 986 F.3d 782, 800 (8th Cir. 2021).

Here, the district court did not abuse its discretion in imposing Clampit's sentence. For one, the sentence is presumptively reasonable because it falls within the Guidelines range. See Feemster, 572 F.3d at 461. The district court also thoroughly considered the factors enumerated in § 3553(a). It considered Clampit's lengthy criminal history, the "singularly unique" dangerousness of a substance like ricin, and the fact that he instructed another person to help him destroy evidence. The district court also considered factors favorable to Clampit, such as his difficult upbringing, drug abuse history, and mental health issues. Additionally, finding an abuse of discretion here would be particularly unreasonable given Clampit's own statements at sentencing that "a guideline sentence gets it right" and "is fair."

Clampit nonetheless argues that the district court abused its discretion because it "should have given more weight" to the fact that he had been addicted to substances since his youth, had mental health issues, and was sexually abused as a child. But the district court specifically considered these facts in imposing his sentence, and it expressly acknowledged their mitigating impact. Indeed, these mitigating factors were what influenced the district court to impose a within-Guidelines range, despite its finding that the aggravating factors of Clampit's conduct "ma[d]e a pretty easy case for the Court to vary upward." Thus, because Clampit's contention is merely a "disagreement with the district court's balancing of relevant considerations," Campbell, 986 F.3d at 800, we hold that the district court did not abuse its discretion in imposing Clampit's sentence.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____