# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1730

_____

United States of America,       *
      *
       Plaintiff – Appellee,       *
      *    Appeal from the United States
      v.       *    District Court for the Eastern
      *    District of Missouri.
Vincent Hill,       *
      *
       Defendant – Appellant.       *

_____

Submitted: December 13, 2007
Filed: January 29, 2008

_____

Before BYE, ARNOLD, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Vincent Hill pled guilty to conspiracy to defraud in violation of 18 U.S.C. § 371 and bank fraud in violation of 18 U.S.C. § 1344. The applicable Guidelines range was 33-41 months' imprisonment. The district court[1] departed upward to 84 months of imprisonment based on Hill's understated criminal history. In addition, the district court imposed 5 years of supervised release, restitution of $5,000, and a special assessment of $200. Hill appeals the reasonableness of the departure. We affirm.

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

## I. Background

### A. Criminal History

Hill has an extensive criminal history as a juvenile and adult. He had several convictions as a juvenile. As an adult, Hill has 11 convictions. In 1965, he was convicted of burglary in the second degree and sentenced to 1 year of imprisonment and 36 months of probation. In 1967, he was convicted of conspiracy and possession of stolen mail and sentenced to 5 years of imprisonment. He and his co-conspirators received approximately $2 million from fraudulent bank transactions using the stolen mail. In 1972, he was sentenced to 30 days in jail for disorderly conduct under the influence of alcohol or drugs—an opiate derivative. He was also convicted of transferring a counterfeit government obligation—$1,010 in counterfeit $10 Federal Reserve Notes—and sentenced to 4 years of imprisonment with a special parole term of 2 years. In 1980, he was convicted of perjury and sentenced to 25 days in jail. Also, for a conviction of conspiracy and 3 counts of bank larceny, he was sentenced to 3 concurrent 5-year terms and a consecutive 5-year term. That same day, in another case in front of the same court, he was convicted of conspiracy and theft of United States mail and sentenced to 2 years of imprisonment. The theft led to an approximate $22,700 loss by banks through forged and counterfeited checks. In 1983, he was convicted of credit card abuse and sentenced to 9 days in jail. He was also convicted for escaping from federal custody and sentenced to 48 months of imprisonment to run consecutively to federal sentences he was already serving for his 1980 federal convictions. In 1992, he was convicted of using a communication facility to further a narcotics conspiracy and sentenced to 48 months of imprisonment and 1 year of supervised release. In 1993, he was convicted of 1 count each of perjury in an application for a driver's license and forgery of a driver's license and 3 counts of sale or receipt of an access card to defraud. He was sentenced to 4 years of imprisonment on the perjury count and 3 years of imprisonment on the other counts to run concurrently.

In addition to Hill's convictions, Hill violated parole or supervised release and was returned to custody on at least 9 occasions. For example, he committed a burglary offense, which led to his 1965 conviction, while on probation for his first 3 burglary convictions. He violated probation for his 1965 conviction by reporting to the probation office only sporadically and being convicted of possessing stolen mail in 1967. While serving time for the 1967 conviction, he participated in work release. But within 6 months, he was both found in the apartment of a female parolee instead of at his work-release job and arrested for forgery after police officers observed him in a vehicle with a person who had cashed a stolen and forged check. He was removed from work release, and his parole date was rescinded. Following his mandatory release date, a violation warrant issued due to his arrest for possession of heroin and association with others who were engaged in the same criminal activity. The criminal charge was dismissed, the violation warrant was cancelled, but he remained in federal custody due to an accusation of transferring a counterfeit government obligation, which led to the issuance of another violation warrant and a conviction in 1972.

While serving time for his 1980 convictions, Hill committed numerous violations, including possession of an unauthorized radio, escaping from an outside detail, which led to a conviction in 1983, 2 positive urine tests for morphine and codeine, and 7 violations for use of narcotics. After his release to parole supervision, his violations continued: failure to report for surprise urine testing on 4 occasions, failure to attend a behavioral class on 3 occasions, and failure to submit a written monthly report and change of address. As a result, he was declared an absconder, and a parole violation warrant was issued. He was located 2 years later when he was arrested for perjury, which led to the 1993 conviction, and charged with using a communication facility to further a narcotics conspiracy, which led to a 1992 conviction. While incarcerated in 1996, he used a telephone without authorization. He was released from prison in 1999 and completed his parole supervision in 2001. He committed the current offenses in 2006 at the age of 63.

Hill's criminal history resulted in a score of 15, establishing a criminal history category of VI. The years from 1974-1979 and 2001-2006 were the only periods during Hill's adult life when he was not under supervision, incarcerated, or involved in criminal activity. Several of his convictions did not count toward his criminal history points because the convictions were too old. These convictions occurred and the resulting prison sentences were completed more than 15 years before the commencement of the present offenses. See U.S.S.G. § 4A1.2(e)(3). Hill was assessed points only for the 5 felony convictions occurring after 1980. If age of his convictions were not a factor, he could have been assessed up to an additional 21 criminal history points.

According to the Presentence Investigation Report (the "PSR"), Hill was involved with criminal activity all his life, and "hustling" and committing fraud were his livelihood. The PSR noted that he could not live within the limits of the law when placed in less restrictive environments, such as work release, outside work details, and parole supervision. The PSR stated that a criminal history category VI was insufficient to represent the seriousness of his criminal history or likelihood of recidivism.

## B. Sentencing Hearing

The district court stated that it was considering an upward departure or variance based on the PSR and asked Hill for comment. Hill objected to an upward departure. The objection was based in part on the plea agreement in which the parties agreed not to request a sentence outside of the anticipated Guidelines range. The government was aware of Hill's criminal history and agreed that a sentence within the Guidelines range would be appropriate. Hill also noted that he was in the highest criminal history category, and as such, the Guidelines sufficiently took his criminal history into account.

Specifically, the district court considered an upward departure under U.S.S.G. § 4A1.3(a)(4)(B), which allows the court to move down the Sentencing Table until the court reaches a Guidelines range appropriate for the category VI defendant. The district court also considered a § 3553(a) variance in place of, or in addition to, a traditional departure for Hill's under-represented criminal history.

The district court addressed Hill's criminal history. The court noted that in spite of his record, his longest sentence of imprisonment was 5 years. The court commented that his first adult criminal conviction was over 40 years earlier, but since that time, he had only brief respites from prison, supervision, and commission of new offenses. The court stated that Hill's history shows "very clearly" he "want[ed] to live a life of crime." The court noted that the current offenses were a continuation of Hill's fraud and theft offenses. Based on the fact that not all of his convictions were counted for purposes of calculating his criminal history category and that he was still in category VI, the court believed that the Guidelines range did "not adequately or properly represent the seriousness of the defendant's criminal history." The court concluded that an upward departure was appropriate under the Guidelines.

The district court next determined an appropriate non-Guidelines sentence. The court considered the nature and circumstances of the offenses and Hill's characteristics and history. The court noted that the nature of the offenses and Hill's history were considered in a Guidelines sentence. However, the court stated that § 3553(a) required the sentence to reflect the seriousness of the offense, to provide adequate deterrence, and to protect the public from further crimes by Hill. The court stated that the public needed protection from Hill, despite his age and physical condition. The court further concluded: "I don't believe that you know how to live any other way, and I don't know that you can change at this point or even whether you want to change." To impress upon Hill the seriousness of the offenses and to protect the public, the court found that a sentence within the Guidelines range was "clearly

unreasonable." The court cited the fact that the high end of the range was lower than any of Hill's previous sentences and that those sentences provided no deterrence.

The district court sentenced Hill to 84 months of imprisonment and 5 years of supervised release.

## II. Discussion

We review the district court's sentence for reasonableness. Gall v. United States, 128 S. Ct. 586, 594 (2007). The reasonableness of the sentence is reviewed under a deferential abuse-of-discretion standard. Id. at 591. "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines." Id. at 594-95. The district court must "ensure that the justification is sufficiently compelling to support the degree of the variance" and "adequately explain the chosen sentence to allow for meaningful appellate review." Id. at 597.

We "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Id. "[T]he Guidelines should be the starting point and the initial benchmark," but the district court should also consider the § 3553(a) factors in determining an appropriate sentence. Id. at 596. If the decision was "procedurally sound," we then review the "substantive reasonableness of the sentence" under the abuse-of-discretion standard considering the totality of the circumstances. Id. at 597. We "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id.

The district court imposed the 84-month sentence using either a § 4A1.3(a)(4)(B) departure or a § 3553(a) variance. The sentence is reasonable under either method. The district court's sentence was procedurally sound. The district court properly calculated the applicable Guidelines range. The district court considered the Guidelines, including § 4A1.3(a)(4)(B), and the § 3553(a) factors and adequately explained Hill's sentence with sufficient justifications for the upward departure and variance. See U.S.S.G. § 4A1.3(a)(1) (stating that a district court may depart upwards "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes"); Gall, 128 S. Ct. at 594 ("It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications.").

The sentence was also substantively reasonable. The district court focused on the high risk of Hill's recidivism. Hill is literally a career criminal, and crime is his way of life. He repeatedly committed offenses while serving sentences for different criminal convictions. The court expressly imposed a sentence to reflect the seriousness of Hill's offenses, to provide adequate deterrence, and to protect the public from further crimes. See 18 U.S.C. § 3553(a)(2). The court noted that previous sentences had not deterred Hill, that the Guidelines range without an upward departure was shorter than many of his previous sentences, and that he repeatedly harmed society through fraud and theft offenses. The court imposed a sentence longer than the Guidelines range of 33-41 months to achieve appropriate sentencing objectives. Accordingly, the district court did not create an unwarranted sentencing disparity. See Gall, 128 S. Ct. at 599 ("Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."). The district court committed no abuse of discretion.

## III.  Conclusion

We affirm the judgment of the district court.

_____