# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1640

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Gabriel Mangum, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 24, 2010
Filed: November 16, 2010

_____

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Gabriel Mangum pleaded guilty to being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), the district court[1] sentenced him to 84 months' imprisonment. Mr. Mangum appealed his sentence and we affirm.

I.

Mr. Mangum argues that the district court erred by holding that he had used or possessed a firearm "in connection with another felony offense," U.S.S.G.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

§ 2K2.1(b)(6), which increased his offense level four levels. We review the court's application of the sentencing guidelines *de novo* and its supporting factual findings for clear error. *United States v. Guiheen*, 594 F.3d 589, 591 (8th Cir. 2010).

In deciding whether the enhancement applied to Mr. Mangum, the district court considered evidence of his role in an illegal check-cashing operation and his prior conviction for first-degree robbery. After hearing argument with respect to both offenses, the court stated that the enhancement "for use of a firearm in connection with another felony offense is properly scored." On appeal, Mr. Mangum does not deny that both offenses are felonies under the relevant guideline, *see* U.S.S.G. § 2K2.1(b)(6) cmt. n.14(C); he argues instead that neither the counterfeit-check offense nor the robbery justifies the four-level increase because the government failed to prove that a firearm was used "in connection with" the illegal conduct. We disagree.

Under § 2K2.1(b)(6), a firearm is used or possessed "in connection with" another felony offense if "its presence facilitated or had the potential to facilitate [that] offense." *Guiheen*, 594 F.3d at 591 (internal quotation marks and citations omitted); *see also* U.S.S.G. § 2K2.1, cmt. n.14(A). Though the enhancement is inapplicable if a firearm was present at the crime scene due to "mere accident or coincidence," where a defendant keeps a firearm "at an easily accessible location" while committing a felony offense, a sentencing court may infer that the firearm "emboldened the defendant to engage in the illegal act." *Guiheen*, 594 F.3d at 591 (internal quotation marks and citations omitted). And this inference is sufficient to support the application of § 2K2.1(b)(6). *Id*. at 591-92*; see also United States v. Kanatzar*, 370 F.3d 810, 816 (8th Cir. 2004), *vacated and remanded on other grounds*, 543 U.S. 1107 (2005), *opinion reinstated*, No. 03-3376, 2005 WL 1421957, at *1 (June 20, 2005).

According to undisputed facts in the pre-sentence report, Mr. Mangum provided counterfeit checks to various individuals issued in their respective names. These individuals then cashed the checks, kept half of the proceeds for themselves, and returned half to Mr. Mangum. During a controlled transaction with law enforcement personnel, Mr. Mangum received a portion of the proceeds from checks that he had previously counterfeited; he also told an undercover officer that he would issue new counterfeit checks in the officer's name. When officers arrested Mr. Mangum soon thereafter, he informed them that he had a firearm in his front coat pocket. They seized a Kel-Tec .380 pistol from the pocket; the gun contained seven rounds of ammunition, including one in the chamber.

While the court did not refer to these facts when it ruled that the enhancement was properly scored, it did, later in the sentencing hearing, find that Mr. Mangum's "criminal behavior" with respect to the illegal check-cashing operation was "coupled with a firearm, loaded, shell in the chamber." We think it plain that the court meant that Mr. Mangum possessed the gun "in connection with" that offense, U.S.S.G. § 2K2.1(b)(6), and we hold that this finding was not clear error. By Mr. Mangum's own admission, the pistol's presence at the meeting was not accidental or merely coincidental: He said during an interview that he had acquired the pistol for protection against "the Bosnians," and some participants in the counterfeiting scheme who cashed checks for him were of Bosnian descent. Furthermore, Mr. Mangum kept the weapon in his front coat pocket, which is quite obviously an "easily accessible location." *See Guiheen*, 594 F.3d at 592. Thus it is a reasonable inference that Mr. Mangum's pistol emboldened him to arrange and attend the controlled transaction to further his illegal enterprise, which, as we have said, is sufficient to justify the § 2K2.1(b)(6) enhancement. *Id.*; *see also Kanatzar*, 370 F.3d at 816.

Mr. Mangum attempts to undermine this inference by arguing that he acquired the pistol for reasons wholly unrelated to his counterfeiting operation. He asserts that he became fearful of the Bosnians only after he rejected the romantic advances of a

sister of one of them. But there is no evidence in the record to support his version of the facts, and the inference that the district court drew from the evidence was both permissible and more plausible than the one that Mr. Mangum argues for.

The district court thus did not err in finding that Mr. Mangum possessed a firearm in connection with another felony offense – the check-cashing operation – and a four level-enhancement under § 2K2.1(b)(6) was appropriate on that basis. Given this conclusion, we need not decide whether Mr. Mangum possessed a firearm in connection with his earlier robbery offense.

## II.

Mr. Mangum also contends that the district court did not provide an adequate explanation for an above-guidelines sentence and that the resulting sentence was substantively unreasonable. Based on his offense level and his criminal history category of IV, the guidelines recommended a sentence of 57-71 months' imprisonment. But the court found that an 84-month sentence was appropriate because Mr. Mangum was at high risk to commit further violent crimes and thus was a danger to the community.

As an initial matter, we construe Mr. Mangum's sentence as involving a variance (a non-guidelines sentence) not an upward departure. *See United States v. Solis-Bermudez*, 501 F.3d 882, 884 (8th Cir. 2007). In determining that additional time was warranted, the district court did not indicate that its sentence involved a departure. Nor did it refer to any "traditional Guidelines-based departures," *id.*, including, notably, U.S.S.G. § 4A1.3(a)(1), which permits an upward departure if the defendant's criminal history category "substantially under-represents" the seriousness of the criminal history or the likelihood of recidivism. *Id.* Rather, after calculating Mr. Mangum's guidelines sentence (including a term of supervised release and applicable fines), the court stated that it had considered the sentencing factors in 18 U.S.C. § 3553(a) and found that a "nonguidelines sentence" was appropriate. All

-4-

this supports the conclusion, despite Mr. Mangum's contention to the contrary, that the district court simply varied from the guidelines.

When reviewing any sentence – including one that varies from the guidelines – we first examine the record to ensure that the district court committed no significant procedural error. *Gall v. United States*, 552 U.S. 38, 51 (2007). As relevant here, a district court commits a significant procedural error if it fails to explain a sentence adequately, including any deviation from the applicable guidelines range. *Id*. Once we are satisfied that the procedural requirements have been met, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id*.

We reject Mr. Mangum's contention that the district court did not adequately explain the sentence. The court provided the necessary "insight into [its] reasons" for deciding to vary 13 months above the suggested guidelines range. *United States v. Feemster*, 572 F.3d 455, 463 (8th Cir. 2009) (en banc) (internal quotation marks and citation omitted). In explaining its rationale, the court found that Mr. Mangum was not a typical category-IV offender after it detailed his criminal history, both unscored (mainly juvenile convictions for terrorism and going armed with intent) and scored (which included a conviction for first degree robbery with a sawed-off shotgun). The court also noted that Mr. Mangum possessed a loaded firearm during his offense of conviction, and, in further support of the sentence, the court cited a recent jailhouse incident where Mr. Mangum, with little provocation, violently assaulted and "pummel[ed]" another inmate. The court described Mr. Mangum as having had an "almost continuous involvement in serious offenses" since his mid-teens, for which he received "fairly lenient treatment" in the state courts that failed to rehabilitate him. These observations by the court more than sufficiently explain its conclusion that Mr. Mangum was at high risk of recidivism and a danger to the community.

The variance was also substantively reasonable. "Substantive appellate review in sentencing cases is narrow and deferential." *Id.* at 464 (internal quotation marks and citations omitted). As we have explained, the court focused on Mr. Mangum's criminal history and the likelihood of his recidivism. It then "expressly imposed a sentence to reflect the seriousness of [his] offenses, to provide adequate deterrence, and to protect the public from further crimes." *United States v. Hill*, 513 F.3d 894, 899 (8th Cir. 2008); *see* 18 U.S.C. § 3553(a). The court also provided "sufficient justification" for its decision that an above-guidelines sentence was warranted, and thus we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. "Where [a] district court in imposing a sentence makes 'an individualized assessment based on the facts presented,' addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." *United States v. Sults*, 575 F.3d 834, 849 (8th Cir. 2009) (quoting *Gall*, 552 U.S. at 50), *cert. denied*, 130 S. Ct. 1309 (2010). The district court more than satisfied this standard here.

## III.

We therefore affirm the judgment of the district court.

_____