# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1642

_____

United States of America

*Plaintiff - Appellee*

v.

Radames Rivera

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 17, 2012
Filed: December 12, 2012
[Unpublished]

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Radames Rivera pleaded guilty, pursuant to a written plea agreement, to conspiracy to distribute less than 100 grams of heroin, in violation of 21 U.S.C.

§ 846. The district court[1] sentenced Rivera to 100 months' imprisonment, an upward variance from the Guidelines range of 37 to 46 months' imprisonment. On appeal, Rivera first argues that the government breached the plea agreement when it did not recommend a sentence within the Guidelines range. Second, he asserts that the district court procedurally erred by failing to properly consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under 18 U.S.C. § 3553(a)(6). Finally, he contends that his sentence is substantively unreasonable. We affirm.

## I. *Background*

Following an investigation into the use of mail to distribute heroin within the Federal Correctional Complex (FCC) in Forrest City, Arkansas, Rivera, along with codefendants Miguel Estrella, Samuel Bension Ventura, and Gordon King, was charged with conspiracy to distribute less than 100 grams of heroin, in violation of § 846.

Rivera pleaded guilty, pursuant to a written plea agreement, to the charge. In the plea agreement, Rivera and the government entered into stipulations regarding Rivera's base-offense level and adjustments to his offense level. Both parties understood that the district court was "not bound by these stipulations" and that Rivera could not withdraw his guilty plea if the district court failed to accept the stipulations. The plea agreement also contained the following paragraph about the Guidelines:

> 6.     SENTENCING GUIDELINES: It is specifically understood by the defendant that the Sentencing Guidelines are not mandatory but are advisory, and that the Court is to consult them in determining the appropriate sentence. *The defendant understands that the determination*

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

*of the applicability of the Guidelines and of the appropriate sentence will be made by the Court. The defendant is aware that any estimate of the probable sentencing range under the Sentencing Guidelines that the defendant may have received from* the defendant's counsel, *the United States*, or the Probation Office, *is merely a prediction, not a promise, and is not binding on the United States*, the Probation Office, or the Court. *The United States makes no promise or representation concerning what sentence the defendant will receive* and the defendant cannot withdraw a guilty plea, or otherwise avoid the defendant's obligations under this Agreement and Addendum, based upon the actual sentence imposed by the Court. The parties understand and agree that if the [G]uideline[s] range is greater or less than the defendant or the United States expected it to be, and/or the sentence imposed by the Court is greater or lesser than anticipated, neither the defendant nor the United States will be allowed to withdraw, nor request withdrawal of, the guilty plea, nor be excused from any obligation under this Agreement and Addendum.

(Emphases added.)

At the change-of-plea hearing, the district court advised Rivera that because the Guidelines are merely advisory, it would consult them but was "not required to follow them." The court informed Rivera that because the Guidelines are advisory, it "has the authority to impose a sentence outside the [G]uideline[s] range," including "a sentence that's more severe than the [G]uideline[s] range." At the court's request, the government summarized the plea agreement, explaining the parties' agreement that (1) Rivera's "base offense level [is] 16," (2) "the offense level should be increased by two levels because the object of the offense was the distribution of a controlled substance in a prison," (3) "Rivera is eligible for a three-point reduction for acceptance of responsibility," and (4) "[n]either party w[ould] seek an increase or decrease in the offense level for [Rivera's] role" or "any additional increases or decreases under Section 2D1.1 or Chapter 3 of the [G]uidelines." The government

stated the parties' "acknowledg[ment] that the Court is not bound by these stipulations."

Rivera confirmed that the government's statement was "an accurate summary of the essential terms of the plea agreement" and that "this written plea agreement represent[ed] the whole agreement between [Rivera] and the government." The court then asked Rivera whether he "believe[d] [that he] ha[d] an agreement with the government as to the sentence that [the district court was] going to impose . . . [at] sentencing"; that is, whether Rivera and the government "ha[d] an agreement for a specific sentence." Rivera responded, "No." After hearing a summary of the government's evidence and Rivera's explanation of his guilt, the district court accepted Rivera's guilty plea.

At sentencing, the court accepted the presentence investigation report (PSR) without any objections. As provided in the PSR and the plea agreement, the court calculated a total offense level of 15. Consistent with the PSR, the court also calculated a criminal history of category V. "Based on an offense level of 15 and a criminal history category of V," the court calculated a Guidelines range of "37 to 46 months." Neither party objected to the court's calculation of the Guidelines range. Rivera's counsel then orally moved for a departure under U.S.S.G. § 5K2.23 to reduce the term of imprisonment by 20 months to give Rivera credit for the time that he previously served. The district court withheld ruling on the motion until imposition of the sentence.

The government then called United States Postal Inspector David Barrett, who testified about the investigation. Following Barrett's testimony, the government asked for an upward variance. The government highlighted Rivera's swift resumption of criminal behavior after release from prison and the length of sentences that Rivera's codefendants received. Specifically, Ventura received a 60-month sentence, and Estrella received a 180-month sentence. The government argued that Rivera

"deserve[d] more than Mr. Ventura's 60 months" but deferred to the court as to the extent of the upward departure.

In response, Rivera's counsel "d[id] not deny" that Rivera "has a lengthy criminal history," but counsel requested that the court consider "all relevant factors, the fact that he's been incarcerated, the information regarding the packaging, who sent who what, and then just take into account the fact that Mr. Rivera did plead guilty, and he's not running from that."

Following counsels' arguments, the district court imposed Rivera's sentence, explaining its responsibility to impose a sentence under § 3553(a). The court described its duties to include

> tak[ing] into account the nature and circumstances of the offense and the history and characteristics of the defendant, and then impos[ing] a sentence that reflects the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The court determined that 120 months was a reasonable sentence for Rivera and then deducted an additional 20 months from that sentence to give Rivera credit for time served. Therefore, Rivera received a sentence of 100 months' imprisonment.

Neither party objected to "the form of the sentence." The court then asked Rivera whether there was "anything about this that you think is contrary to your plea agreement or any promises that have been made to you." Rivera's counsel responded, "I think the only argument that my client would have is that he wasn't prepared for an upward departure from the [G]uidelines. But I'll explain, of course, how that works

and why he was able to request that upward variance, Your Honor." The court recognized counsel's statement as an objection and overruled the objection.

## II. *Discussion*

On appeal, Rivera first argues that the government breached the plea agreement when it did not recommend a sentence within the Guidelines range. Second, he asserts that the district court procedurally erred by failing to properly consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under 18 U.S.C. § 3553(a)(6). Finally, he contends that his sentence is substantively unreasonable.

### A. *Plea Agreement*

Rivera argues that the government breached the plea agreement when it failed to recommend a sentence within the Guidelines range and instead requested an upward variance, stating that (1) "the [G]uideline[s] range in this case is way too low"; (2) "there was some question about whether or not Mr. Rivera would be a career offender, and he did not qualify, but when you look at his criminal history, it's a pretty long one, and it's actually a pretty violent one, as well, when you look at his earlier crimes"; and (3) "we're going to ask the Court to either depart or vary upwards and give him at least—well, he deserves more than Mr. Ventura's 60 months, and we'll leave that up to the discretion of the Court. But certainly he deserves more than Mr. Ventura."

Rivera failed to raise "the issue of breach of the plea agreement to the district court"; as a result, "our review is for plain error." *United States v. Mesteth*, 687 F.3d 1034, 1037 (8th Cir. 2012).[2] To prevail "under a plain-error standard of review,"

---

[2]Rivera concedes in his brief that plain-error review applies, as he argues that "the government breaching its own plea agreement is *plain error* that affects substantial rights." (Emphasis added.)

Rivera bears the burden of "show[ing] that there was an error, the error is clear or obvious under current law, the error affected [Rivera's] substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation and citation omitted).

Rivera relies on *United States v. Baker*, 674 F.3d 1066 (8th Cir. 2012), in support of his argument that the government breached the plea agreement by not recommending a sentence within the Guidelines range. *Baker* is inapposite. In that case, "the [g]overnment agreed [in the plea agreement] to recommend a sentence at the low end of [the defendant's] advisory [G]uidelines range." *Id*. at 1067. Unlike the plea agreement in *Baker*, the government in the present case *never* agreed to recommend any particular sentence based on the Guidelines or otherwise. The parties only stipulated to Rivera's base-offense level and adjustments to his offense level, recognizing that the court was not bound by the stipulations. Furthermore, ¶ 6 of the plea agreement shows that the government *was not* obligated to recommend a particular sentence. To the contrary, it confirms Rivera's understanding that (1) the district court would "determin[e] the appropriate sentence," (2) "any estimate of the probable sentencing range . . . that [Rivera] may have received from . . . the United States . . . is merely a prediction, not a promise, and is not binding on the United States," and (3) the government "makes no promise or representation concerning what sentence [Rivera] will receive."

At the change-of-plea hearing, the district court asked Rivera whether he "believe[d] [that he] ha[d] an agreement with the government as to the sentence that [the district court was] going to impose . . . [at] sentencing"; that is, whether Rivera and the government "ha[d] an agreement for a specific sentence." Rivera responded, "No." We hold that the government complied with the terms of the plea agreement, and no error—plain or otherwise—occurred.

-7-

### B. *Sentencing*

Rivera also challenges his 100-month sentence,[3] asserting both procedural error and substantive unreasonableness.

We review a district court's imposition of a sentence under a "deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotations and citations omitted). Our first task is to "ensure that the district court committed no significant procedural error." *Id*. (quotation and citation omitted). "In the absence of procedural error below, we should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id*. (quotation and citation omitted).

### 1. *Procedural Error*

A district court commits procedural error when it "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id*. (quotation and citation omitted).

Here, Rivera asserts that the district court procedurally erred by failing to properly consider § 3553(a)(6)—"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." At sentencing, the district court stated:

> Mr. Ventura was sentenced to 60 months. I don't remember what his criminal history was. But his involvement in the case, I think it's fair to say he was less culpable than Mr. Rivera. Mr. Estrella would have been

---

[3] As indicated *supra*, the district court reduced Rivera's 120-month sentence by 20 months for time previously served.

equally or perhaps more culpable. And his criminal history put him in the career offender category, which Mr. Rivera is not, and so he's not going to get sentenced as though he was in the career offender category, but I think he lies somewhere between Mr. Ventura and Mr. Estrella.

According to Rivera, the district court should not have compared codefendant Ventura's and Rivera's criminal record in fashioning Rivera's sentence because "the transcript is bare as to Ventura's criminal record" and the district court "could not remember what . . . Ventura's . . . criminal history was." (Quotation omitted.)

"While § 3553(a)(6) requires courts to consider 'the need to avoid *unwarranted* sentence disparities among defendants with similar records who have been found guilty of similar conduct,' (emphasis added), it does not prohibit a sentencing court from finding that a disparity is, in fact, 'warranted.'" *United States v. Boneshirt*, 662 F.3d 509, 519 (8th Cir. 2011) (citing *United States v. Vasquez*, 433 F.3d 666, 671 (8th Cir. 2006) (finding that a sentencing disparity between codefendants was "not unwarranted" where one "was responsible for a larger quantity of drugs and had a greater criminal history" than the other)).

Here, the district court could not recall what Ventura's "criminal history was," but it found that Ventura "was less culpable than Mr. Rivera" and that Estrella was "equally or perhaps more culpable. And his criminal history put him in the career offender category, which Mr. Rivera is not."[4] The court concluded that Rivera's conduct "lies somewhere between Mr. Ventura and Mr. Estrella." Thus, the district court was evaluating the culpability levels of the various defendants in the present

---

[4]The government made the court aware of Ventura's criminal history, stating, "Just so the Court is aware, I do believe Mr. Ventura was a career offender, but he had a 5K motion, and that's how the Court got to 60 months, just so you're aware." The court noted the correction.

offense, not their criminal histories. Rivera's "sentence is reasonable . . . because the disparity in this case is not unwarranted." *Vasquez*, 433 F.3d at 671. The district court gave Rivera "a greater sentence than [Ventura]" because it found Rivera more culpable. *Id.*

Therefore, we conclude that no procedural error occurred.

## 2. *Substantive Reasonableness*

Rivera argues that his sentence is substantively unreasonable because even though "the high end of the [G]uideline[s] range was 46 months," the district court "varied more than two and a half times the 46[-]month recommendation and found a 120-month sentence to be fit."[5] He notes that his sentence is "120 times the statutory minimum sentence."

"In conducting [substantive-reasonableness] review, we are to take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Feemster*, 572 F.3d at 461 (quotation and citation omitted). We are prohibited from "apply[ing] a presumption of unreasonableness if the sentence is outside the Guidelines range," "requir[ing] extraordinary circumstances to justify a sentence outside the Guidelines," and "us[ing] . . . a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*. at 461–62 (quotations and citation omitted). "Instead, we may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id*. (quotation and citation omitted). We may not reverse the district court's chosen sentence even though "we might reasonably have

---

[5]Rivera acknowledges that "[t]he court . . . granted a 20-month adjustment to comport with another sentence in another case wherein the trial court in another district expressed a desire that its sentence be run concurrent with the case at hand."

concluded that a different sentence was appropriate." *Id*. at 462 (quotation and citation omitted). "Substantive appellate review in sentencing cases is narrow and deferential." *United States v. Mangum*, 625 F.3d 466, 469 (8th Cir. 2010) (quotation and citation omitted).

We hold that the upward variance is substantively reasonable. In fashioning Rivera's sentence, the district court focused on Rivera's criminal history. The court also noted that (1) "the [G]uideline[s] range understate[d] the seriousness of the offense," (2) Rivera had failed to "learn much respect for the law," (3) "the need for adequate deterrence [was] high," and (4) "the need to protect the public from further crimes of [Rivera]" constituted a "fairly significant" factor. Based on the district court's sentencing colloquy, we hold that the district "court . . . provided sufficient justification for its decision that an above-[G]uidelines sentence was warranted, and thus we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Mangum*, 625 F.3d at 470 (quotations and citation omitted).

III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____