# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1513
_____

United States of America

*Plaintiff - Appellee*

v.

Lamar Bertucci

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: September 18, 2023
Filed: October 10, 2023
_____

Before SMITH, Chief Judge, ARNOLD and ERICKSON, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After Lamar Bertucci violated the conditions of his supervised release, the district court[1] sentenced him to 24 months in prison even though the Sentencing Guidelines recommended 5–11 months. He maintains that the district court failed to

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

explain the sentence adequately and imposed a substantively unreasonable sentence. We affirm.

Bertucci was indicted on a charge of assault by a habitual defender in Indian country, *see* 18 U.S.C. § 117(a)(1), and was detained pending trial. Less than two months later, he entered into a plea agreement in which he agreed to plead guilty in exchange for a sentence of time served. *See* Fed. R. Crim. P. 11(c)(1)(C). Bertucci was released from custody the same day to await sentencing about three months later. But when the time for sentencing arrived, Bertucci failed to appear. He did not surface again for eleven months. He nonetheless received a sentence of time served as the plea agreement contemplated. He also received a three-year term of supervised release, which commenced immediately.

A few months into supervision, Bertucci's probation officer alleged that he had violated the conditions of supervised release by disappearing, testing positive for methamphetamine, failing to reveal that local police had contacted him regarding a stolen van, and failing to complete a substance abuse evaluation as directed. Bertucci was arrested a few weeks later and detained. After a few months, the district court permitted Bertucci's release so he could attend treatment in a short-term residential facility. While Bertucci was completing his stint there, the court entered an order permitting him to reside in a sober-living house for up to three months. But a few weeks after moving into the sober-living house, Bertucci's probation officer informed the court that he had disappeared. Staff at the sober-living house later found a homemade methamphetamine pipe in his room and so terminated his placement there. It wasn't until about a year and a half later that police in Iowa arrested Bertucci. Because he possessed marijuana and lied to officers about his identity, an Iowa state court sentenced him to five days in jail and fined him.

Bertucci then appeared before the district court for a hearing on the alleged violations of his supervised release. He admitted that he had left the sober-living

house and that he had unlawfully possessed a controlled substance when Iowa officers arrested him. Defense counsel requested a sentence within the recommended range of 5–11 months' imprisonment, pointing out Bertucci's history of substance abuse, homelessness, personal trauma, and employment. He also attempted to explain why Bertucci has absconded many times. And, he argued, the 24-month, statutory maximum sentence that the probation officer recommended should be reserved for those with the most significant criminal history or those who commit the most serious violations. The government, meanwhile, emphasized Bertucci's multiple disappearances, his history of assaulting people, and his poor performance on supervision in this and a previous case. It recommended a 24-month sentence.

In imposing a 24-month sentence, the district court began by noting that it had considered the sentencing criteria in 18 U.S.C. § 3583(e). It observed that Bertucci had failed to stay in the sober-living house "for even a month" and that he received a sentence of only time served on his underlying offense. And it noted that Bertucci "has a considerable history of not showing up and violating prior court orders," and so an upward variance was warranted, the court explained, "for the reasons stated by the United States, and, frankly, some of the facts that were outlined by the defense as well."

Bertucci maintains on appeal that the district court committed procedural error when it "failed to articulate a sufficient basis for its sentence." We disagree. When explaining a sentence, a court need only set forth enough to satisfy us that it considered the parties' arguments and had a reasoned basis for exercising its legal decisionmaking authority. *See United States v. Clark*, 998 F.3d 363, 368 (8th Cir. 2021). The district court provided ample reason for imposing an upward variance, including the fact that Bertucci stayed at the sober-living house only briefly, previously received leniency, frequently violated court orders, and absconded for months on end.

-3-

Bertucci faults the court for failing to discuss certain matters, such as "how the sentence would provide [him] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *see* 18 U.S.C. §§ 3583(e), 3553(a)(2)(D), and "the possibility of home detention or community confinement." *See* USSG § 7B1.3(c)(1). But the court isn't required to discuss or recite each statutory sentencing consideration before imposing sentence; when, as here, the court mentions some of them, we presume it is aware of them all. *See United States v. Castillo*, 713 F.3d 407, 412 (8th Cir. 2013). And given that these matters played an insignificant role, if any, in the parties' arguments before the court, we see no error here. Bertucci also says that the court "made only passing reference to the sentencing Guidelines range," but our review of the record reveals that the court fulfilled its obligation to calculate the Guidelines range, which defense counsel agreed was correctly determined.

We also reject Bertucci's argument that the court improperly "delegated the articulation of the sentence's basis to the parties" when it justified the sentence in part based on "the reasons stated by the United States, and, frankly, some of the facts that were outlined by the defense as well." Again, the court's explanation of the sentence it reached "set forth enough to satisfy us that it considered the parties' arguments and had a reasoned basis for exercising its legal decisionmaking authority." *See Clark*, 998 F.3d at 368. The context of the court's incorporation of the parties' arguments shows merely that it agreed with the government's sentencing recommendation and was concerned as well about some of the very points that defense counsel highlighted, such as Bertucci's inability to kick his substance-abuse habits and his "lifetime of avoidance behavior."

Finally, Bertucci contends that the sentence is substantively unreasonable. "It will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *See United States v. Michels*, 49 F.4th 1146, 1148 (8th Cir. 2022). Bertucci has absconded

-4-

from the justice system multiple times and has displayed an unwillingness to abide by the law and the conditions of his release. "We have repeatedly held that it is not unreasonable for a sentencing court to demonstrate with an upward variance that contemptuous disregard for our laws can have serious consequences." *See id.* at 1149.

We are also unpersuaded by Bertucci's related contention that those who face a longer Guidelines range because they committed more serious violations or have more serious criminal histories will fare no worse than Bertucci, creating an unwarranted sentencing disparity. But Bertucci's Guidelines range did not account for many considerations that drove the district court's selection of sentence, such as Bertucci's absconding multiple times, the leniency he previously received, or his past failures to abide by conditions of supervised release.

Affirmed.

_____