# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2716
_____

United States of America

*Plaintiff - Appellee*

v.

Mohamed Gamar Ahmed

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: April 8, 2024
Filed: June 4, 2024
_____

Before LOKEN, SHEPHERD, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Mohamed Gamar Ahmed pled guilty to a two-count indictment charging him with possession of cocaine and fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1), and possession of a firearm in furtherance of a drug

trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The district court[1] varied upward based on the relevant offense conduct and sentenced Ahmed to 108 months' imprisonment. Ahmed appeals, alleging that the district court committed procedural error and imposed a substantively unreasonable sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

The indictment resulted from the execution of a search warrant on Ahmed's residence in Grand Island, Nebraska, where law enforcement officers discovered loaded handguns and ammunition, drug paraphernalia, marijuana, cocaine, and pills that bore the markings of Percocet. Subsequent testing revealed that the pills were counterfeit and contained fentanyl, a synthetic opioid. In preparation for sentencing following Ahmed's guilty plea, the United States Probation Office prepared a presentence investigation report (PSR), which alleged that Ahmed had supplied one of the fentanyl-laced pills to a minor female, B.L., who overdosed after ingesting it.[2] In response, the Government filed a motion for an upward departure or variance on the drug-possession count, arguing that the United States Sentencing Guidelines range of 15-21 months' imprisonment failed to adequately account for the extent of the harm caused by Ahmed's drug-dealing. Ahmed objected to the allegation in the

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

[2]The PSR also alleged that officers discovered in Ahmed's residence the school identification card of a male who had overdosed the month prior in an alley behind Ahmed's apartment complex. The district court overruled Ahmed's objection to the allegation, but it is unclear whether it relied on this portion of the PSR in fashioning Ahmed's sentence. In any case, Ahmed makes only a passing reference to this event in the facts section of his brief and does not raise it as a point of error. We therefore address only his challenge relating to the allegation of B.L's overdose. See United States v. Aldridge, 561 F.3d 759, 765 (8th Cir. 2009) (declining to consider an argument that the appellant abandoned on appeal).

PSR, and the district court conducted an evidentiary hearing at sentencing that involved testimony from two witnesses.

The Government first called Tjade Rodocker, a firefighter paramedic for the City of Grand Island who responded to a call of an unconscious female who did not have a pulse and was not breathing. Upon arriving at the scene, Rodocker found B.L. lying unconscious on the ground as a police officer performed CPR. He observed that her pupils were constricted and nonreactive, that her skin was ashen, and that she was exhibiting agonal breathing, all of which were indicators of an opioid overdose. The CPR successfully restarted B.L.'s heart, which allowed Rodocker to begin administering Narcan intravenously. Almost immediately, B.L.'s breathing returned to normal, and she regained consciousness five minutes later. Rodocker, who had trained extensively to respond to such incidents, noted that Narcan is exclusively used to treat opioid overdoses and is ineffective in reversing the effects of any other type of drug.

The Government next called Shane Kucera, a drug task force investigator for the Grand Island Police Department who interviewed B.L.'s boyfriend, E.C., at the police station following B.L.'s transportation to the hospital. E.C. told Investigator Kucera that he and B.L. were attending a birthday party and left to purchase a Percocet pill from a male named "Mo" in an alley off South Locust Street across from Sanchez Plaza. Based on his work with the drug task force, Investigator Kucera knew that "Mo" was Mohamed Ahmed's nickname. He also recognized that E.C. was describing the Blackstone Apartment complex as the site of the drug transaction, which was where Ahmed resided. E.C. further stated that when he and B.L. arrived at the alley, "Mo" approached the vehicle from the apartment complex and exchanged a single pill for $20. The couple then returned to the party, crushed the pill, and each snorted a line. While E.C. felt only a "small high," B.L. quickly became unconscious, leading the partygoers to call 911.

Immediately following his interview with E.C., Investigator Kucera visited B.L. in the hospital to inquire into the events preceding her overdose. B.L. initially

-3-

claimed that a male named "Faded" had provided the pill at the birthday party, but she recanted once Investigator Kucera "told her that [he] knew she was lying," and B.L.'s sister pleaded with her to be honest. B.L. then recited a version of events that closely tracked those provided by E.C. Namely, B.L. recalled that she and E.C. left the party to meet with a male named "Mo" in an alley behind the Blackstone apartment complex. Once they arrived, a man matching the physical description of Ahmed provided them with a single pill. The couple then returned to the party, where they crushed and snorted the pill together, which was the last event that B.L. remembered before Rodocker revived her with Narcan.

After hearing the direct- and cross-examinations of both witnesses, the district court overruled Ahmed's objection to the PSR, finding that the testimony of Rodocker and Investigator Kucera was "absolutely consistent" with the allegation that Ahmed supplied the pill that caused B.L. to overdose. The district court then proceeded to sentencing, stating that it had considered all the federal sentencing factors enumerated in 18 U.S.C. § 3553(a), including the serious nature of the offense and Ahmed's history and characteristics, including his age and lack of a violent criminal record. The district court varied upward on the drug-possession count to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," ultimately sentencing Ahmed to 48 months' imprisonment. Ahmed also received a mandatory minimum term of 60 months' imprisonment on the firearm-possession count, to be served consecutively, for a total of 108 months' imprisonment.

II.

Ahmed now appeals, alleging that the district court procedurally erred and imposed a substantively unreasonable sentence. "When we review the imposition of sentences, whether inside or outside the Guidelines range, we 'apply a deferential abuse-of-discretion standard.'" United States v. Isler, 983 F.3d 335, 341 (8th Cir. 2020) (quoting United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)). Our review is two-fold: "first, we review for significant procedural error;

-4-

and second, if there is no significant procedural error, we review for substantive reasonableness." United States v. Kistler, 70 F.4th 450, 452 (8th Cir. 2023) (citation omitted).

A.

Ahmed advances several claims of procedural error. He first argues that the district court erred by relying on the PSR's allegation that he supplied the fentanyl-laced pill that caused B.L. to overdose. A district court procedurally errs when it relies on clearly erroneous facts in selecting a sentence. Feemster, 572 F.3d at 461. "A sentencing court may accept the facts in a PSR as true unless the defendant objects to specific factual allegations." United States v. Sorrells, 432 F.3d 836, 838 (8th Cir. 2005). If the defendant so objects, "then the sentencing court may not rely on those facts unless the government proves them by a preponderance of the evidence." United States v. Bowers, 743 F.3d 1182, 1184 (8th Cir. 2014) (citation omitted).

Here, we find no clear error in the district court's factual finding that Ahmed distributed the fentanyl-laced pill to B.L. Rodocker, a firefighter paramedic experienced in treating opioid overdoses, testified that B.L. exhibited the tell-tale signs of an opioid overdose and that she responded immediately to the administration of Narcan, a drug that is only effective in reversing opioid overdoses. Further, Investigator Kucera testified about his interviews with B.L. and E.C., in which both minors independently identified an individual Investigator Kucera knew to be Ahmed as the source of the pill and described Ahmed's apartment complex as the site of the drug transaction. A subsequent search of Ahmed's residence revealed a stash of counterfeit Percocet pills—the brand of opioid that E.C. believed he was purchasing—that tested positive for fentanyl.

Ahmed resists this conclusion largely by challenging the veracity of B.L.'s and E.C.'s statements to hospital staff and the police regarding the frequency of B.L.'s marijuana use, her alcohol consumption at the birthday party, and the source

of the fentanyl-laced pill. These credibility-based arguments fall short, however, as it is well-established that "in sentencing matters a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." United States v. Jefferson, 725 F.3d 829, 834 (8th Cir. 2013) (citation omitted). While E.C. and B.L. were hearsay witnesses, Investigator Kucera testified that the pair provided corroborative factual accounts and did not have an opportunity to communicate or otherwise align their stories before being interviewed separately. See United States v. Pepper, 747 F.3d 520, 524 (8th Cir. 2014) (finding that "[t]he corroboration of a declarant's statement provides sufficient indicia of reliability to support the statement's probable accuracy" under USSG § 6A1.3, thus allowing a district court to rely on the hearsay statement at sentencing "without regard to its admissibility under the rules of evidence applicable at trial"). Moreover, the Government's witnesses were subject to cross-examination, with Ahmed's counsel specifically questioning Investigator Kucera on these matters. The district court nonetheless found B.L.'s and E.C.'s statements credible. We see no reason to disturb the district court's determination in this respect.

Ahmed's other arguments fare no better. He points to the fact that B.L. and E.C. never identified him by name, instead referring to the supplier of the pill only as "Mo." However, Investigator Kucera testified that he knew from his experience on the drug task force that "Mo" was Mohamed Ahmed's nickname, and that Ahmed resided at the apartment complex where the Percocet purchase took place. Ahmed also claims that B.L.'s mother told police she suspected another male present at the birthday party had provided the pill. But according to Investigator Kucera's testimony, B.L.'s mother stated only that the male had provided drugs on previous occasions; she did not accuse the male of providing the fentanyl-laced pill to B.L. Finally, Ahmed contends that B.L.'s drug screening did not indicate the presence of fentanyl, suggesting that she could have overdosed on another type of opioid. Rodocker explained in his testimony, though, that hospital drug screenings typically do not test for synthetic opioids, like fentanyl, and that such tests are often conducted off-site over a period of days. In sum, the district court heard Ahmed's arguments but found that the Government's evidence sufficiently established that Ahmed was

the source of the pill that caused B.L. to overdose. Based on this record, we are satisfied that the district court conducted the requisite "investigation and verification of the disputed statements in the PSR" and that its factual findings were not clearly erroneous. United States v. Campbell, 986 F.3d 782, 798 (8th Cir. 2021).

B.

Ahmed next argues that the district court impermissibly considered only his offense conduct under § 3553(a) and, by extension, did not adequately explain its reasons for varying upward. Because Ahmed did not object at sentencing on these grounds, he benefits only from plain error review, pursuant to which a "defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." United States v. Thigpen, 848 F.3d 841, 847 (8th Cir. 2017) (citation omitted). A district court procedurally errs when it fails to consider the § 3353(a) factors or does not adequately explain its chosen sentence. Feemster, 572 F.3d at 461. In our review, however, we generally only look to whether the district court was aware of the relevant § 3553(a) factors, see United States v. Holmes, 87 F.4th 910, 916 (8th Cir. 2023); there is no requirement that the district court "robotically recite" every factor it considers. United States v. Ruiz-Salazar, 785 F.3d 1270, 1273 (8th Cir. 2015) (per curiam). Moreover, "[w]hen explaining a sentence, a court need only set forth enough to satisfy us that it considered the parties' arguments and had a reasoned basis for exercising its legal decisionmaking authority." United States v. Bertucci, 83 F.4th 1086, 1088 (8th Cir. 2023). Finally, "[w]hen reviewing a court's decision to vary upward, we 'must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" United States v. Boyd, 956 F.3d 988, 991 (8th Cir. 2020) (citation omitted).

Contrary to Ahmed's assertion, the district court stated that it considered the relevant offense conduct in conjunction "with all other Section 3553(a) factors." It proceeded to discuss these factors, including the nature of the offense, Ahmed's criminal history and personal characteristics, and the need for the sentence to reflect the seriousness of the offense and to promote respect for the law. Specifically, the

district court noted that law enforcement had discovered a "veritable drugstore" at Ahmed's residence during the execution of the search warrant, which indicated that Ahmed was "an active young man at that point in time in the sale and administration of drugs." The district court further remarked that it had considered Ahmed's age and lack of a violent criminal history in setting the appropriate punishment but determined that the nature of the offense justified an upward variance. In sum, there is no doubt that the district court was aware of the relevant § 3553(a) factors and sufficiently explained the basis for its sentence. Accordingly, we find no procedural error.

III.

Ahmed also challenges his sentence as substantively unreasonable. "A district court abuses its sentencing 'discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" United States v. Petersen, 22 F.4th 805, 807 (8th Cir. 2022) (citation omitted). "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." Feemster, 572 F.3d at 464 (citation omitted). Ahmed asserts that the district court failed to consider factors mitigating his culpability, including that he was a drug addict and suffered from mental illness at the time of the offense, while it afforded too much weight to his offense conduct.

Ahmed's arguments fail, as a district court enjoys wide latitude to assign the weight it sees fit to the relevant § 3553(a) factors. United States v. Noriega, 35 F.4th 643, 651 (8th Cir. 2022). The district court heard Ahmed's arguments at sentencing and found that his age and lack of a violent criminal history were mitigating factors. It also recommended that Ahmed participate in an intensive drug treatment program on account of his "history of substantial drug abuse." However, the district court stated that it primarily considered the "very serious nature of the offense" in

fashioning its sentence, remarking that Ahmed was "very fortunate somebody didn't die during the course of this offense." While the district court did not address Ahmed's purported history of mental illness, "not every reasonable argument advanced by a defendant requires a specific rejoinder by the judge." United States v. Banks, 960 F.3d 982, 985 (8th Cir. 2020) (citation omitted); see also United States v. Goodhouse, 81 F.4th 786, 793 (8th Cir. 2023) ("[B]ecause [the defendant] presented these arguments at sentencing, we presume the district court considered and rejected them."). Ultimately, Ahmed's dissatisfaction with the district court's balancing of the § 3553(a) factors does not justify reversal for an abuse of discretion. United States v. Wickman, 988 F.3d 1065, 1068 (8th Cir. 2021). We find that the district court imposed a substantively reasonable sentence.

IV.

The judgment of the district court is affirmed.

_____